538 So.2d 919 (1989)
TREND COIN Company, Appellant,
v.
FULLER, FEINGOLD & Mallah, P.A., Appellee.
No. 88-573.
District Court of Appeal of Florida, Third District.
January 31, 1989.
Rehearing Denied March 15, 1989.
*920 Hall & O'Brien and Scott Orth, Miami, Carlton, Fields, Ward, Emmanuel, Smith & Cutler and Alan C. Sundberg, Tallahassee, for appellant.
Fine, Jacobson, Schwartz, Nash, Block & England and Joseph H. Serota and Arthur England, Miami, for appellee.
Before HUBBART, NESBITT and BASKIN, JJ.
BASKIN, Judge.
This appeal follows the entry of a final judgment awarding attorney's fees to Fuller Feingold & Mallah, P.A., [Fuller Feingold] for its representation of Trend Coin Company. Finding error in the trial court's assessment of the fees, we reverse.
In early 1980, Trend Coin sustained a multimillion dollar loss when its premises were burglarized. Trend Coin retained attorney Larry Fuller of the law firm of Fuller Feingold to seek recovery of damages from Honeywell, Inc., the burglar alarm company with whom it had contracted. Trend Coin agreed to pay a contingent attorney's fee; the fee was to be 40% of the recovery if appellate proceedings were undertaken. Approximately seven months after accepting representation, at Trend Coin's suggestion, Fuller Feingold associated Larry Stewart of Floyd Pearson Richman Greer Weil Zack & Brumbaugh, P.A. [Floyd Pearson], as co-counsel for trial. Prior to this time, Trend Coin had not voiced any dissatisfaction with Fuller Feingold's representation. A revised attorney's fee arrangement provided for a 50% contingency fee in the event of appeal, to be divided between the two firms. Larry Fuller and Larry Stewart attended all depositions and the trial. Larry Stewart was lead counsel and controlled the conduct of the litigation.
Trend Coin had discussed privately its dissatisfaction with the attorney's fee arrangement, but said nothing to the attorneys until the case proceeded to trial, when it sought to reduce the fee. Larry Stewart and Larry Fuller refused to lower the fee. During trial, but before the jury returned with its verdict, Trend Coin offered Stewart and Fuller one million dollars each, in lieu of the contract fee, but they declined the offer.
The case proceeded to trial, culminating in a jury award to Trend Coin of 12.2 million dollars. Honeywell, Inc., appealed. Fuller Feingold and Floyd Pearson prepared the briefs jointly. At that point, Trend Coin discharged both Fuller Feingold and Floyd Pearson, and hired Larry Stewart's new firm, Stewart Tilghman Fox & Bianchi [Stewart Tilghman], as its sole counsel. Fuller Feingold filed a charging lien for its fees and costs.
After considering the merits of the appeal, this court affirmed the judgment as to liability, but reversed and remanded for a new trial on the question of damages. Honeywell, Inc. v. Trend Coin Co., 449 So.2d 876 (Fla. 3d DCA 1984). In response to Trend Coin's petition for writ of certiorari, the supreme court reversed a portion of this court's decision and remanded the cause for a new trial. Trend Coin Co. v. Honeywell, Inc., 487 So.2d 1029 (Fla. 1986). Prior to retrial, however, Stewart negotiated a final settlement in Trend Coin's favor in an amount slightly greater than the original jury verdict.
Trend Coin, Fuller Feingold, Stewart Tilghman, and Floyd Pearson entered into a stipulation. The stipulation affirmed that a 12.3 million dollar settlement had been reached by Trend Coin and Honeywell, and that a fund consisting of 25% of that amount had been set aside in an interest-bearing escrow account as provision for payments which might be determined to be due Fuller Feingold under its charging lien. The trial court approved the stipulation and conducted a non-jury trial to determine the appropriate disposition of the charging lien. At the conclusion of the trial, the court found: (1) Trend Coin contracted for and received the joint representation of two law firms; (2) its team of lawyers produced a *921 significant benefit for Trend Coin by recovering a jury verdict of 12.2 million dollars and obtaining, through trial and initial appellate work, a judgment of liability and a right to recover punitive damages; (3) Trend Coin eventually obtained a similar result by continuing the services of one of its team of lawyers for fees no greater than had originally been agreed for that counsel; (4) Trend Coin discharged its counsel, after counsel had substantially performed the contract and obtained a favorable result, for the sole purpose of reducing fees; and (5) Trend Coin had intentionally induced its attorneys to work on the case for three and one-half years without communicating its desire for lower fees. The court ruled that Trend Coin acted in bad faith and awarded Fuller Feingold the full contract fee. We reverse.
The amount of the fee to which an attorney is entitled after discharge without cause is governed by the principles set forth in Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982). In Rosenberg, the supreme court held that "an attorney employed under a valid contract who is discharged without cause before the contingency has occurred or before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee." Rosenberg, 409 So.2d at 1021. The purpose of the Rosenberg rule is to protect a client's unqualified right to change counsel, regardless of the client's motives. Rosenberg, 409 So.2d at 1021. See, e.g., Fracasse v. Brent, 6 Cal.3d 784, 100 Cal. Rptr. 385, 494 P.2d 9 (1972), adopted by the Florida Supreme Court in Rosenberg v. Levin, 409 So.2d at 1022 (inherent in the relationship between attorney and client is the client's right to terminate the relationship at will, with or without cause). The Rosenberg rule protects both the client and the attorney. The client is neither penalized for exercising his right to change counsel, nor unjustly enriched at the attorney's expense; he is required to pay the reasonable value of the attorney's services at the time of discharge.
The Rosenberg rule has been applied strictly. Even when the contingency has almost occurred at the time of the attorney's discharge, the fee awarded the attorney is limited to the capped quantum meruit amount provided in Rosenberg. See Schwanebeck v. Calzado, 524 So.2d 478 (Fla. 3d DCA 1988) (attorney who effected settlement for client after being discharged and replaced entitled only to quantum meruit recovery for services rendered prior to discharge); Barton v. McGovern, 504 So.2d 457 (Fla. 1st DCA 1987) (attorney discharged after settlement agreement was announced in open court, but before it was reduced to writing, entitled only to quantum meruit recovery for his services, limited by the maximum fee set forth in the contract); Blanton v. Blanton, 413 So.2d 453 (Fla. 5th DCA 1982) (attorney discharged on day before final hearing entitled only to the reasonable value of his service, limited by the contract amount); see also, Kopplow & Flynn, P.A. v. Trudell, 445 So.2d 1065 (Fla. 3d DCA), review denied, 453 So.2d 44 (Fla. 1984); de la Cruz v. Brown, 338 So.2d 245 (Fla. 3d DCA 1976); compare Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193 (Fla. 1976) (attorney permitted to recover the contract fee when discharged after obtaining result specified in contract). The Rosenberg rule governs here. Applying its tenets, we conclude that because the contingency upon which Fuller Feingold's fee was based had not occurred at the time the attorneys were discharged, Fuller Feingold is limited to a quantum meruit recovery that does not exceed the contract fee.
Fuller Feingold asserts that if it is not entitled to the full contract fee, then the federal lodestar method of assessing fees set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), should be employed. We disagree. This court has held repeatedly that Rowe's application is limited to "fees imposed ancillary to the primary action against a non-client either under common law principles ... or ... pursuant to statutory authorization." Stabinski, Funt & De Oliveira v. Alvarez, 490 So.2d 159, 160 (Fla. 3d DCA), review denied 500 So.2d 545 *922 (Fla. 1986). See also Shlachtman v. Mitrani, 508 So.2d 494 (Fla. 3d DCA), cause dismissed, 518 So.2d 1278 (Fla. 1987). Rowe has no application here. The appropriate criteria for determining the value of the discharged attorney's services are enunciated in Rosenberg: "the totality of the circumstances surrounding the professional relationship between the attorney and client . . [including] . . time, the recovery sought, the skill demanded, the results obtained, and the attorney-client contract." Rosenberg, 409 So.2d at 1022.
Although the trial court correctly concluded that the Rosenberg factors provided the proper measure of Fuller Feingold's services, the court erred in its application of the Rosenberg standards. The court awarded the contract fee, three million dollars, to a law firm which had been discharged significantly before the contracted-for contingency occurred. The award represented an hourly rate of approximately $3,000, an amount we deem excessive and a circumvention of Rosenberg's holding. We therefore reverse the trial court's determination and remand for an assessment in conformity with Rosenberg's pronouncement.
Trend Coin's remaining points lack merit.
Reversed and remanded for further proceedings.