549 So.2d 1073 (1989)
Craig A. BOUDREAU, Petitioner,
v.
The Honorable James T. CARLISLE, Circuit Court Judge of the Fifteenth Judicial Circuit ex rel. State of Florida, Respondents.
Vernon D. AMOS, Petitioner,
v.
James T. CARLISLE, Respondent.
Nos. 89-2309, 89-2338.
District Court of Appeal of Florida, Fourth District.
September 19, 1989.
Craig Boudreau, West Palm Beach, pro se.
Vernon D. Amos, West Palm Beach, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Deborah Guller, Asst. Atty. Gen., West Palm Beach, for respondents.
WARNER, Judge.
Defendant, Vernon Amos, has filed a pro se Petition for Writ of Prohibition, which we treat as a Petition for Writ of Certiorari, *1074 requesting our review of the trial court's order denying his "Motion to Withdraw Counsel Due to a Conflict of Interest" in which he requested that his trial counsel be discharged and the court appoint substitute counsel. His trial attorney, Craig Boudreau, by Emergency Petition for Writ of Certiorari, also requests review of the trial court's order denying his motion to withdraw, claiming that the denial results in a situation where he will be violating the Rules of Professional Conduct. We consolidate these petitions for the purpose of rendering our decision.
The facts which surround this appeal are fully set forth in the trial court's order, which we reprint in its entirety.

ORDER DENYING MOTION BY DEFENSE COUNSEL TO WITHDRAW AND ORDER DENYING MOTION BY DEFENDANT AMOS FOR SUBSTITUTION OF COUNSEL
"This is a matter of considerable urgency. This court is required, under 3.191g F.S. to commence jury trial in these cases by October 15, 1989. Further, if this case is delayed it will be necessary to sever Mr. Spencer's case and try it separately, at great cost and inconvenience to the State. I am advised the last trial on these facts occupied five weeks.

......
"Craig Boudreau was appointed by the court and represented Vernon Amos at his original trial in 1986. Amos was convicted and received two death sentences. Boudreau was appointed to represent Amos on appeal before the Florida Supreme Court. On June 15, 1989, the Florida Supreme Court reversed Amos' conviction and sentences and remanded for a new trial. The mandate was issued on July 14, 1989.
"On July 22, 1989, Amos filed a civil suit against Boudreau in the County Court of the Fifteenth Judicial Circuit, alleging malpractice and seeking monetary damages in case number MS-89-13771-RB. Boudreau immediately filed a Motion to Withdraw as counsel for Vernon Amos.
"This matter came before me initially on August 30, 1989. I ordered that an evidentiary hearing be held on August 31, 1989, and instructed Mr. Amos to be prepared to inform the court as to any actions that Mr. Boudreau did or failed to do that Mr. Amos considered amount to malpractice. On August 31, 1989, I learned that in addition to the malpractice action Mr. Amos had filed a Bar complaint against Mr. Boudreau. At the evidentiary hearing on August 31, 1989, I afforded Mr. Amos ample opportunity to explain the nature of his civil complaint or his Bar complaint. Mr. Amos declined to do so on the ground that to speak to the civil complaint would compromise his defense and the Bar complaint was confidential (T. 5, & 6). I offered Mr. Amos an opportunity for an in-camera hearing to tell me whether there was any real conflict between himself and Mr. Boudreau. He declined (T. 26).
"I ordered Mr. Boudreau to reveal the nature of the Bar complaint against himself under pain of contempt (T. 8). Mr. Boudreau testified that while he did not have a copy of the Bar complaint, it was basically the same as the civil complaint (T. 9). Mr. Boudreau testified he was unsure as to the nature of Mr. Amos' complaint; that long prior to the first trial he filed a Motion to Draw a jury panel from the entire county as opposed to the eastern jury district; that he believed he competently represented Mr. Amos at trial; that the jury deliberated sixteen hours before finding Mr. Amos guilty of two first degree murders; that he represented Mr. Amos on appeal and presented the jury district issue, as well as other issues, to the Supreme Court; that the Supreme Court found the jury district to the (sic) unconstitutional and reversed the convictions; that he was unsure why "all of a sudden Mr. Amos isn't happy with me" (T. 9 and 10); that he had always had good relations with Mr. Amos until the suit was filed; and that the only thing he could think of was Mr. Amos had requested that he call a certain witness but he did not do so because he felt the witness knew nothing about the case and the testimony would be inadmissible in evidence (T. 10).
*1075 "Mr. Boudreau further testified that despite the actions filed against him he would competently represent Mr. Amos at trial, during a second stage, and any appellate actions thereafter (T. 28); that he was unaware of any conflict of interest (T. 30); and that given co-operation from Mr. Amos he could continue to represent him (T. 29).

THE QUALITY OF MR. BOUDREAU'S REPRESENTATION
"I did not have the opportunity to watch Mr. Boudreau defend Mr. Amos. I am unable to discern from any of the pleadings filed by Mr. Amos in what manner Mr. Boudreau was deficient. Nor am I able to learn from Mr. Amos why he believes Mr. Boudreau failed him. Mr. Boudreau is as much in the dark as I am.
"Nevertheless, I have known Mr. Boudreau for a number of years. I have watched him prosecute cases and I have presided over several trials in which he represented defendants. He has never been anything less than capable and competent.
"As to this case, I can only look at the results. Mr. Boudreau was astute enough to move the trial court for a jury comprised of persons drawn from the entire county, as opposed to the eastern jury district. By doing so he saved Mr. Amos from death in the electric chair and gave him another chance in the form of a new trial. That sounds like competence to me.

THE PHANTOM CONFLICT
"I have not the foggiest notion after holding an evidentiary as to what, if any, conflict exists between Amos and Boudreau. If there is a disagreement, ethical or otherwise, Mr. Amos has kept it to himself. But assuming for the purposes of argument that there is, in fact, an ethical conflict, withdrawal and substitution of counsel is not always mandated. In Sanborn v. State, (3DCA) 474 So.2d 309, there was, in fact, an ethical conflict. Mr. Sanborn directed his attorney to represent testimony which the attorney knew to be false. The court recognized that withdrawal and appointment of new counsel would not alleviate the problem.
"If withdrawal were allowed every time a lawyer was faced with an ethical disagreement with the accused, the ultimate result would be a perpetual cycle of eleventh hour motions to withdraw and an unlimited number of continuances for the defendant."

.....
"For this reason, trial courts are given broad discretion to determine whether a motion to withdraw should be granted in situations like the present one. The primary responsibility of the court is to facilitate the orderly administration of justice." (Citation omitted.)
"In making the decision of whether to grant counsel permission to withdraw, the trial court must balance the need for the orderly administration of justice with the fact that an irreconcilable conflict exists between counsel and the accused. In doing so, the court must consider the timing of the motion, the inconvenience to witnesses, the period of time elapsed between the alleged offense and trial, and the possibility that any new counsel will be confronted with the same conflict." (Citation omitted.)
"As long as the trial court has a reasonable basis for believing that the attorney-client relationship has not deteriorated to a point where counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in denying a motion to withdraw." (Citation omitted.)
"The decision of a trial court to deny a motion to withdraw will not be disturbed absent a clear abuse of discretion." See also Nix v. Whiteside, 475 U.S. 157 [106 S.Ct. 988, 89 L.Ed.2d 123]. See also Rule 4-1.16(c) Rules of Professional Conduct.

SOME POLICY CONSIDERATIONS

A. Lawyers Need to be in Charge:

"In the business of providing a defense in criminal trials, it usually works best if the persons making the decisions has been to law school, passed the bar, and tried a few cases. If lawyers need to withdraw every time they have a difference of opinion *1076 with their client, then it is the clients who are in charge. With some notable exceptions, most persons charged with crimes are not as well-equipped as their attorneys to make the necessary decisions in a criminal case. If the attorney is to provide the effective assistance of counsel, the attorney must be the one who makes those decisions. Automatically requiring the attorney to withdraw and the appointment of new counsel, with the filing of a malpractice action or a Bar complaint, places the defendant, and not the attorney, in charge.
"In addition, it creates a magic button to be pushed, or magic words to be intoned, by defendants to effect delay, cause consternation to their enemies, and frustrate the system of justice.

B. The One-Free-Bite Approach:

"The courts might look at this situation as analogous to a motion to recuse a judge. All that needs to be alleged is a well founded fear that a fair trial cannot be had before a particular judge. That judge is required to recuse himself. In the instant matter, all that need be alleged is a well founded belief present counsel could not present an adequate defense. The court would then be required to grant a motion to withdraw.
"That approach would over load a system already strained to the breaking point, result in most public defender clients being assigned private counsel, and severely hamper the administration of justice.

C. The Problem for Replacement Counsel:

"Unless the court can learn the nature of the conflict we run the risk that replacement counsel will encounter the identical disagreement. In this instance Mr. Boudreau is left to wonder as to the cause of the disagreement. "Was it something he said?"
"If Mr. Amos were required to divulge the nature of the disagreement we could determine whether the same problem would exist for replacement counsel.

THE SANBORN CRITERIA (See 474 So.2d at 314)

A. The Timing of the Motion:

"Mr. Amos is scheduled to go to trial October 2, 1989. The ninety days required by Rule 3.191g R.C.P. expires October 15, 1989. The motion is truly an eleventh hour motion. Mr. Amos was asked to explain why he did not raise the question of the adequacy of counsel until he did. His only answer was that he had learned something of the law since his conviction.

B. Inconvenience of Witnesses:

"I am not specifically aware of any particular inconvenience to any witness. In general, however, delay works to the advantage of the accused. Witnesses die, forget, and move away.
"Good citizens who "get involved" are subpoenaed to testify and structure their lives around the requirement to present themselves before the court at a certain time and place. Vacations are postponed, business decisions are altered. Once again, the witnesses in this case have been subpoenaed. Once again, they rearrange their lives. Witnesses who learn they restructure their schedule only to have cases postponed and again become reluctant witnesses.
"Sanborn is silent as to inconvenience to the court, but the appellate court should understand that this court cancelled a week of motions and abandoned plans to attend the Conference of Circuit Court Judges in Key West on October 18-20, 1989, in order to reach this trial within ninety days of the issuance of the Supreme Court's mandate.

C. The Time Elapsed Between the Offense and the Trial:

"The indictment alleges these offenses occurred on June 12 and 13, 1986. The trial is scheduled for October 2, 1989.
"The actions filed by Mr. Amos are, as nearly as I can determine after full and fair hearing and opportunity to be heard, frivolous. They are nothing more than an attempt to delay the process of justice and affect the orderly administration of justice. Undoubtedly, there will be cases wherein real conflict arises between defendant(s) *1077 and counsel. But undoubtedly courts have the means of discerning when this is the case. This is not one of them. Accordingly, it is:
"ORDERED AND ADJUDGED the Motion to Withdraw filed by Mr. Boudreau and the Motion for Discharge of Counsel and Appointment of New Counsel filed by Mr. Amos are denied.
"DONE AND ORDERED this 5th day of September, 1989, at West Palm Beach, Palm Beach County, Florida.
Based on this decision, we consider first whether the trial court departed from the essential requirements of law in denying Amos' motion to appoint substitute counsel. In Hardwick v. State, 521 So.2d 1071 (Fla. 1988), the supreme court adopted this court's procedure for determining whether a defendant is entitled to a change of court appointed counsel where he alleges incompetence or ineffectiveness of counsel.
It follows from the foregoing that where a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Nelson v. State, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973). The trial court below made a lengthy inquiry as to Amos' claim of ineffectiveness of counsel and determined that such a claim was frivolous. Therefore, the Nelson procedure has been met.
However, Amos contends that because he filed a malpractice complaint and grievance against Boudreau, an actual conflict has arisen and therefore the motion must be granted. We disagree. A similar claim was made in Thomas v. State, 421 So.2d 160 (Fla. 1982). In that case the defendant claimed that an irreconcilable conflict existed between himself and appointed counsel, thus depriving the defendant of effective assistance of counsel. At the hearing on defendant's motion, it appeared that the conflict was created by the defendant in refusing to communicate with his lawyer. The trial court denied his motion and on appeal the supreme court agreed, stating "a defendant must not be allowed to refuse to cooperate with his attorney and then attempt to create an issue of ineffective counsel on the basis of his refusal to cooperate." Thomas, 421 So.2d at 164.
Likewise, Amos has himself created the conflict with his attorney by filing the malpractice claim. But that suit is no more than a claim of ineffective assistance of counsel which the trial court has deemed to be frivolous at a full evidentiary hearing. We do not perceive that the filing of the complaint creates any more actual conflict than the allegations of ineffective assistance of counsel in the motion itself.
Furthermore, if the trial court were to permit the discharge of Boudreau and substitution of other counsel, then because of the filing of the malpractice complaint, Boudreau may be in a position to be compelled to testify against Amos concerning communications with his client. By filing the malpractice suit, Amos has waived his attorney-client privilege as to communications between himself and Boudreau in connection with Boudreau's representation during the first trial and appeal. Procacci v. Seitlin, 497 So.2d 969 (Fla.3d DCA 1986). Such a dilemma has been avoided by the trial court denying the defendant's motion to discharge counsel.
*1078 Thus, we find that the trial court did not depart from the essential requirements of law, and we hold that a trial court is not obligated to grant a motion to substitute counsel based solely upon the filing of a malpractice complaint or grievance alleging incompetence of counsel where the court has held an evidentiary hearing and determined such claims to be without foundation.
Amos has not requested the court to be permitted to represent himself. He has only asked for substitute counsel to be appointed. He made no request at the hearing to represent himself. If he again requests the discharge of his counsel, then the trial court, consistent with Nelson should advise the defendant that if he discharges Boudreau the state may not thereafter be required to appoint a substitute. Furthermore, the trial court also must inquire into Amos' desire to represent himself and his ability to make a knowing and intelligent waiver of his right to be represented by counsel. See Hardwick; Nelson.
We turn now to Boudreau's Petition for Writ of Certiorari. His claim is that the court departed from the essential requirements of law by denying his motion to withdraw, alleging that he is in actual conflict with Amos due to the filing of the malpractice complaint. He cites Rule of Professional Conduct 4-1.16(a) as compelling his withdrawal. That rule states:
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client:
(1) The representation will result in violation of the rules of professional conduct or law; (emphasis supplied)
Boudreau has overlooked Paragraph (c) which states:
(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
Here, after a full hearing where Boudreau himself testified that despite the filing of the complaints against him he felt he could competently represent Amos, the trial court ordered Boudreau to continue his representation. Thus, since the court ordered continued representation, Boudreau is not faced with an ethical problem.
The trial court thoroughly analyzed Boudreau's potential conflict in light of the reasoning of Sanborn v. State, 474 So.2d 309 (Fla.3d DCA 1985), and his conclusion is convincing. The record supports the conclusion that the creation of the "conflict" by filing what appears to be an unfounded malpractice complaint based upon prior, not current, representation is a tactical ploy whose purpose is solely to delay trial, thwart the orderly administration of justice in this case, and could conceivably compromise the very integrity of our adversary process. We note that at the hearing the assistant state attorney informed the court that there were three similar motions filed, coupled with malpractice suits against defense counsel. While each case must be judged on its own merits as to claims of incompetence of attorneys, we fear an avalanche of such motions as an effective way of frustrating trial if such a procedure may be condoned where there is a complete absence of justifiable grounds for the ineffectiveness claims.
We therefore deny the petition for writ of certiorari. We consider this to be a question of great public importance, one that impacts substantially on the administration of justice. Therefore, we certify the following question to the supreme court:
Is a trial court required to grant a defendant's motion to discharge and substitute counsel or his counsel's motion to withdraw based solely upon the defendant's filing of a malpractice complaint or grievance against his counsel alleging incompetence, where the court holds an evidentiary hearing and determines such claims to be frivolous?
GLICKSTEIN and WALDEN, JJ., concur.