623 So.2d 764 (1993)
Mary KAY, Appellant,
v.
HOME DEPOT, INC., et al., Appellees.
No. 93-177.
District Court of Appeal of Florida, Fifth District.
August 13, 1993.
Rehearing Denied September 24, 1993.
*765 J. Larry Hanks and James R. Spence, Orlando, for appellant.
Gus R. Benitez of Benitez & Butcher, P.A., Orlando, for appellee James O. Driscoll, P.A.
No appearance for appellee, Home Depot, Inc.
PETERSON, Judge.
Mary Kay appeals a final judgment in a personal injury action awarding a contingent attorney's fee and costs to her former attorney. The attorney had withdrawn from representing her before the case was settled. We reverse.
Kay was injured when a display hammock fell on her in a retail store. She engaged an associate of James O. Driscoll, P.A., to pursue her claim, but Driscoll personally supervised her case when the associate departed the association. Driscoll's efforts resulted in the defendant's making various settlement offers all of which Driscoll apparently advised Kay to accept. Kay insisted that she wanted to go to trial. One week prior to trial the defendant made an offer of $40,000 and again Driscoll advised her to settle. When she declined, someone from Driscoll's office talked with Kay on the phone for an hour attempting to gain her consent to settle, but Kay remained steadfast. Kay met Driscoll at his office and after heated discussions about their different attitudes about settlement, Driscoll told her he would not go to trial and would withdraw from her case even though trial was scheduled within one week.
On March 16, 1992, shortly after Kay's final refusal to settle for $40,000, Driscoll filed a motion to withdraw, stating as grounds that differences with the client had arisen over the value of the claim and the manner in which he was conducting the lawsuit. The motion also requested that the case be stricken from the trial docket. The trial court granted Driscoll's motion to withdraw, which was without objection from Kay, and continued the trial for 90 days because Kay was unable to obtain substitute counsel.
Hampered by Driscoll's asserted lien for fees, Kay was turned down by several attorneys but finally obtained the services of Robert G. Murrell. On April 7, 1992 Driscoll notified Murrell of his lien based on costs of approximately $2,000 and a contingency fee on a $40,000 recovery. On September 17, 1992, Driscoll notified Murrell that he learned the case had been settled and that he was seeking compensation. Murrell disputed Driscoll's entitlement to fees and advised him to seek compensation through the trial court.
A hearing on Driscoll's fees was held on November 4, 1992 with Murrell appearing on Kay's behalf. Kay testified that Murrell was successful in recovering $45,000 for her and that she accepted because she had been discharged recently from a one-month stay in the hospital and was financially distressed. She also testified that she became hysterical when Driscoll told her one week before trial that he was withdrawing. She did not want a lawyer to represent her who did not wish to work for her, and no one ever advised her that, if she consented to Driscoll's withdrawal, she might be liable to him for attorney's *766 fees.[1] She stated that she understood that if Driscoll's law firm did not recover for her there would be no fee, and that she did not feel Driscoll was entitled to a fee when it was he who broke their contract one week prior to trial. Finally, she stated that it was Driscoll's decision to withdraw and that she did not consent to the withdrawal.
The court divided the $16,000 contingent fee on $40,000 of the settlement by awarding 5/9 to Murrell and 4/9 to Driscoll. Driscoll's costs of $2,042.74 were also awarded to him. The eleven-page order reflects the trial court's attempt to be fair to the two lawyers based upon the relative amount of work devoted to Kay's case and a general reliance on the theory of quantum meruit. The order does not provide any citations of authority for the division.
An attorney who is employed under a valid contingency contract, and who is discharged without cause before the contingency occurs, can recover the value of his services in quantum meruit. Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982); Trend Coin Co. v. Fuller, Feingold & Mallah, P.A., 538 So.2d 919 (Fla. 3d DCA 1989). Under appropriate circumstances, the fact that an attorney does not represent a client at the time of judgment or settlement does not necessarily preclude a recovery of attorney's fees, although that recovery is limited to quantum meruit. Rosenberg; Schwanebeck v. Calzado, 524 So.2d 478 (Fla. 3d DCA 1988). Florida, however, does distinguish between those situations where a client unjustifiably discharges an attorney and where an attorney unjustifiably terminates his relationship with a client.
The instant case is controlled by two Florida cases: The Florida Bar v. Hollander, 607 So.2d 412 (Fla. 1992) and Smith v. Parker, 508 So.2d 1262 (Fla. 5th DCA 1987). In Hollander, attorney Hollander directed an associate to terminate representation of a personal injury client because he thought the representation would not be successful or profitable. When the client would not agree to terminate the representation agreement, the attorney moved to withdraw and the trial court granted the motion. Hollander then filed a charging lien for costs and fees in the client's court file. The client's displeasure with the withdrawal and subsequent assertion for a fee resulted in a disciplinary hearing and an appeal by Hollander to the supreme court. In adopting the referee's recommended discipline, the supreme court stated:
[I]t is also the Court's view that any contingency fee contract which permits the attorney to withdraw from representation without fault on part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical.
Id. at 415.
It does not appear that in the instant case, Kay was at fault in her dealings with Driscoll since the sole controversy between them was Driscoll's desire to settle the claim for $40,000 and Kay's desire to proceed to trial or at least obtain a larger settlement by rejecting the $40,000 offer. It is understandable that an attorney may wish to avoid the uncertainties, time and stress of trial if that attorney's opinion of the value of a case is lower than the settlement offer. While that opinion can be expressed strongly to the client, the final decision is the client's. Paragraph 10 of the Statement of Client's Rights states:
10. You, the client, have the right to make the final decision regarding settlement of a case... . However, you must make the final decision to accept or reject a settlement.
Rules Regulating the Florida Bar 4-1.5, Statement of Client's Rights.
In Hollander, the attorney included two withdrawal clauses in his written contract with the client. One allowed him to obtain fees, charges and expenses through the date of withdrawal and the second allowed him to obtain the original agreed upon contingent fee when, subsequent to the withdrawal, the client obtained a recovery *767 through the services of another attorney. The court indicated displeasure with the two clauses and was also troubled by an agreement that on its face appeared to allow the recovery of two fees. While the clauses of the Hollander written agreement are not present in the instant case, and no suggestion of a double recovery has been made, it appears that Driscoll attempted to accomplish substantially the same remedy as was attempted under the second clause of Hollander. In the instant case, while the trial court did not allow that remedy, it did grant a remedy similar to that described in the prohibited first clause of the Hollander agreement. The supreme court's condemnation in Hollander of those remedies renders them unavailable to Driscoll.
In Smith v. Parker, 508 So.2d 1262 (Fla. 5th DCA 1987), this court was presented with an appeal by an attorney who unilaterally terminated his agreement to represent a client. The attorney joined a firm representing the former client's opponent which made continued representation impossible. In reversing the trial court's award of partial fees this court stated:
[O]f more concern to us is the question of whether Beshara was entitled to anything once he unilaterally terminated his agreement to represent Smith... . That [contingency fee] agreement terminated when he withdrew and Smith, absent some further agreement or modification, had no further duty or obligation to Beshara. The contract was at an end... . The situation here is entirely different than where the client terminates the agreement or in some way causes or forces his attorney to terminate representation. .. .
Parker, 508 So.2d at 1263 (emphasis added). Recovery of any fee was denied. Accordingly, we also reverse the award of any fee to Driscoll.
The trial court's award of costs in the instant case is another matter. Driscoll submitted an itemized cost statement for these charges and the trial court evidently found them reasonable by awarding them in the amount of $2,042.74. Costs are the responsibility of the client and Driscoll is entitled to a charging lien for those costs upon the settlement proceeds from Kay's claim.
The trial court's final judgment dividing the contingent fee is vacated to the extent that it awards any attorney's fees to James O. Driscoll and James O. Driscoll, P.A. Under the facts of this case neither Driscoll nor his professional association is entitled to any attorney's fees under any theory including quantum meruit. The award of costs of $2,042.74 to Driscoll is affirmed.
JUDGMENT VACATED IN PART; AFFIRMED IN PART.
HARRIS, C.J., and W. SHARP, J., concur.
NOTES
[1] The record does not reflect whether a "Statement of Client's Rights" under Rules Regulating the Florida Bar 4-1.5 was presented to or signed by Kay. An unsigned statement of rights is in the record.