DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE MINEO SALCEDO LAW FIRM, P.A.,**
Appellant,

v.

**LOLY CESARD** and **YANITE JEAN CESARD,**
Appellees.

No. 4D20-1761

[January 12, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gerald Joseph Curley, Judge; L.T. Case No. 502016CA002039XXXXMBAA.

Peter Mineo, Jr., of The Mineo Salcedo Law Firm, P.A., Davie, for appellant.

Jennifer S. Carroll of the Law Offices of Jennifer S. Carroll, P.A., Jupiter, and Michael J. Celeste of Celeste Law Firm, West Palm Beach, for appellees.

KLINGENSMITH, J.

Appellant The Mineo Salcedo Law Firm, P.A., represented appellees Loly and Yanite Jean Cesard in a first-party property claim brought against their insurance carrier. Appellant received notice that the Cesards filed a complaint to The Florida Bar against two of the firm's lawyers.[1] This occurred after appellant worked on the Cesards' claim for almost two years and the firm's lawyers recommended the Cesards accept a settlement offer from the insurer. The Bar complaint ultimately prompted the firm to withdraw and file a charging lien for fees incurred during its representation to that point. The question presented to this court is whether the trial court erred in failing to award reasonable fees pursuant to the charging lien. Because various factual questions remain unanswered, we reverse and remand for further proceedings.

---

[1] The Cesards stated in their Bar complaint that one of the firm's lawyers used profanity and was not forthcoming with documents related to the lawsuit and settlement negotiations.

The facts in this case are largely undisputed. Upon receipt of the complaint, the firm's senior partner contacted the Bar's ethics hotline for an opinion on whether the Bar complaint created an irreconcilable conflict of interest necessitating the firm's withdrawal. The Bar responded that the complaint created a conflict of interest sufficient to ethically require the firm's withdrawal from the case. After the trial court granted the firm's motion to withdraw, the Cesards withdrew their Bar complaint.[2] Thereafter, appellant filed its notice of charging lien.

The Cesards' new counsel eventually settled the case, and the trial court held an evidentiary hearing regarding the charging lien. At that hearing, the firm presented expert testimony to corroborate its assertion that a conflict indeed existed due to the Cesards' Bar complaint and that the Bar's ethics rules made its withdrawal necessary under Rule Regulating The Florida Bar 4-1.7(b)(1). The Cesards argued that because they had a contingency fee agreement with the firm, and the firm voluntarily withdrew from representation prior to the contingency occurring, the firm was not entitled to any fees.

Because the firm created no contemporaneous time records, nor did it ever locate the original signed fee agreement, the firm's expert arrived at his opinion regarding the reasonable amount of fees by reviewing the trial docket, an unsigned contract purported to be of the kind that clients would have signed, as well as several pages of handwritten time entries that were not contemporaneously made. As a result, the expert opined that the firm was entitled to compensation in the total amount of $82,630.00. Although the Cesards' new attorney testified at the hearing, they presented no expert to opine on either the conflict of interest issue or the amount of the firm's reasonable attorney's fees.

The trial court found the firm was not entitled to a lien for its fees but awarded it $9,000.00 for costs, including expert fees, and $6,250.00 as the value of the benefits provided, reduced by what the court described as "the detriment incurred for the 11th hour, perhaps avoidable, withdrawal." In its ruling, the trial court concluded that the Cesards' complaint did not demonstrate conduct that would have automatically allowed the firm to withdraw under Rule Regulating The Florida Bar 4-1.16(b). Additionally,

---

[2] The evidence presented at the hearing showed that the firm withdrew from representation less than two weeks before the start of the trial docket. Further, at the hearing on the motion to withdraw, the firm represented to the court that Mr. Cesard still wanted the firm to continue representing him despite filing of Bar complaint.

the trial court found that discussions between the firm and the Cesards might have resolved the issues without a withdrawal just before trial. The trial court also included the following paragraph in its order about the application of *Faro v. Romani*, 641 So. 2d 69 (Fla. 1994), to the firm's claim that a conflict of interest existed:

> The Court accepts that [appellant's senior partner] personally felt that the bar complaint created differences between him and the [Cesards] which would inhibit his continued representation, and that he felt the substance of the [Cesards'] bar complaint or his conduct made it difficult if not impossible for [the senior partner] or a member of his firm to continue to represent the plaintiffs. [The senior partner's] decision to withdraw has financial repercussions. As stated in *Faro*, supra, "the existence of grounds for withdrawal does not always translate into an attorney's right to be paid for work performed." This is one such circumstance.

After the trial court issued its final order, this appeal followed.

"A party's entitlement to attorneys' fees is reviewed *de novo*." *De La Riva v. Chavez*, 303 So. 3d 955, 958 (Fla. 4th DCA 2020) (quoting *Weiner v. Maulden*, 267 So. 3d 1045, 1047 (Fla. 4th DCA 2019)).

For nearly 170 years, the Florida Supreme Court has recognized "an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983); *see, e.g., Carter v. Davis*, 8 Fla. 183 (1858); *Randall v. Archer*, 5 Fla. 438 (1854)). The Florida Supreme Court explained the basis for this right more than a century ago:

> While our courts hold the members of the bar to strict accountability and fidelity to their clients, they should afford them protection and every facility in securing them their remuneration for their services. An attorney has a right to be remunerated out of the results of his industry, and *his lien* on these fruits is founded in equity and justice.

*Carter v. Bennett*, 6 Fla. 214, 258 (1855).

A "charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Walia v. Hodgson Russ LLP*, 28 So. 3d 987, 989

3

(Fla. 4th DCA 2010) (quoting *Rudd v. Rudd*, 960 So. 2d 885, 887 (Fla. 4th DCA 2007)). As a product of common law, "[n]o statutes outline the requirements for valid attorney's liens in Florida." *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986). Instead, the proceedings are equitable in nature, *Nichols v. Korelinger*, 46 So. 2d 722, 724 (Fla. 1950), and subject to a well-developed body of case law, *Sinclair*, 428 So. 2d at 1384–85. *See Austin & Laurato, P.A. v. U.S.*, 539 F. App'x 957, 961 (11th Cir. 2013) ("The requirements for imposing an attorney's charging lien are not codified in a Florida statute, but rather are governed by case law.").

Case law in Florida also establishes the rules regarding an attorney's entitlement to recover fees under a contingency fee agreement where the attorney either withdraws or is discharged prior to the occurrence of the contingency. *See Faro*, 641 So. 2d 69; *Kay v. Home Depot, Inc.*, 623 So. 2d 764 (Fla. 5th DCA 1993). When an attorney voluntarily withdraws from representation of a client before the contingency occurs, the attorney forfeits all rights to compensation unless the client's conduct makes the attorney's continued performance either legally impossible or would cause the attorney to violate an ethical rule, in which case the attorney may be entitled to a fee when the contingency occurs. *Faro*, 641 So. 2d at 69–70; *Kay*, 623 So. 2d at 764.

**Bar Complaint and Withdrawal**

Before addressing the charging lien at issue, we must address the firm's withdrawal from the case. The determination of whether the firm's withdrawal was voluntary or involuntary influences how the charging lien is resolved. This court explained the general rule in *Fid. Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 98 So. 3d 672 (Fla. 4th DCA 2012):

> If, prior to the conclusion of the case, the client discharges an attorney employed under a contingency fee agreement without cause, then the attorney may recover the reasonable value of his services, as limited by the contract maximum. If an attorney employed under a contingency fee agreement is discharged for cause, he may recover in quantum meruit, with such amount reduced by the damages suffered by the client as the result of counsel's misconduct. But, where an attorney voluntarily withdraws from the representation prior to the conclusion of the case, the attorney generally forfeits all right to recover a fee. An exception is made, allowing the withdrawing attorney to recover in quantum meruit, if the client's conduct made the attorney's continued representation

4

legally impossible or if the client's conduct would cause the attorney to violate his or her ethical obligations.

*Id.* at 675 (citations omitted).

When an ethical dilemma results from a force within the lawyer's control and is not due to the client's conduct, withdrawal will forfeit compensation. *Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc.*, 699 So. 2d 321, 324 (Fla. 3d DCA 1997). "Since the practice of law requires that the interests of the client be considered before those of the attorney, the burden must be on the attorney to show withdrawal was not only mandated by ethical rules, but was also based on circumstances outside the attorney's control." *Id.*

The Florida Supreme Court in *Faro* ruled that an attorney may only be entitled to a contingency fee "if the client's conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate the ethical rule of the Rules Regulating The Florida Bar." *Faro*, 641 So. 2d at 71. In that case, an attorney entered into a contingency fee agreement to represent a client in an insurance claim, but the attorney moved to withdraw based on "irreconcilable differences" before the case went to trial. *Id.* at 70. Once the client had obtained new counsel and settled the claim, the attorney sought to impose a charging lien for the fees and costs associated with his representation of the client. *Id.* The trial court ordered the client to pay a substantial portion of his award to the attorney based on "quantum meruit and the contractual agreement of the parties." *Id.*

On appeal, the Florida Supreme Court noted Rule 4-1.16(a) mandated "an attorney withdraw if the representation will result in violation of the Rules of Professional Conduct or law." *Id.* at 71. The Court held that an attorney who withdraws because continued representation (1) would be illegal or (2) would violate an ethical rule of the Florida Bar, "may be entitled to a fee when the contingency of an award occurs." *Id.* However, an attorney working on a contingency fee basis who withdraws of their own volition forfeits all rights to compensation. *Id.* The Florida Supreme Court held that the attorney in *Faro* should not have received compensation because the record did not support a finding that the client's conduct created an ethical dilemma. *Id.*

An expansive body of case law in Florida addresses an attorney's entitlement to a contingency fee where the attorney voluntarily withdraws or is discharged from representation prior to the conclusion of a case. *See, e.g., Faro*, 641 So. 2d at 71; *Feldman v. Davis*, 53 So. 3d 1132 (Fla. 4th

DCA 2011); *Carbonic Consultants*, 699 So. 2d at 323; *Hernandez v. Philip Morris USA, Inc.*, 306 So. 3d 362, 363–64 (Fla. 3d DCA 2020). However, no Florida court appears to have provided guidance on whether an attorney's withdrawal because of a client's Bar complaint is considered voluntary or involuntary.

Nevertheless, *DePena v. Cruz*, 884 So. 2d 1062 (Fla. 2d DCA 2004), is instructive on the Bar rules' application to the exceptions enumerated in *Faro*. In *DePena*, an attorney represented clients in a contingency-fee case, but after the attorney recommended his clients accept a settlement offer, they questioned his loyalty and competence. *Id.* at 1063. This led the attorney to withdraw from the case, citing "irreconcilable differences." *Id.* The now-former attorney requested a charging lien, claiming that he was owed compensation under his contingency fee agreement. *Id.* The trial court denied the lien. *Id.*

On appeal, the attorney argued that *Carbonic Consultants* created an additional exception to those laid out in *Faro*—one that allowed for compensation after withdrawal when there was a "breakdown in the attorney-client relationship." *Id.* at 1064. The Second District rejected that argument, declaring, "To the contrary, the case law, particularly in this district, has followed *Faro* in stating that the two enumerated exceptions in *Faro* are the only circumstances that justify a finding that the attorney was entitled to the fee." *Id.* The Second District noted that no other case in the state had granted attorney's fees after a withdrawal under *Faro* simply because of a breakdown in the attorney-client relationship. *Id.*

The *Faro* rule has also been applied to situations where Rule 4-1.7 required an attorney to withdraw. *See Smith & Burnetti, P.A. v. Faulk*, 677 So. 2d 404, 404 (Fla. 2d DCA 1996) (holding that a law firm should receive attorney's fees because, due to the client's actions, it had no ethical choice but to terminate its relationship pursuant to Rule 4-1.7 and *Faro*); *see also Hernandez*, 306 So. 3d at 363–64 (holding that an attorney who withdrew from representation after their client "embarked on a course of untoward conduct designed to undermine the integrity of the prosecution of the case and subvert the judicial process" was allowed attorney fees under *Faro*).

Here, the firm's senior partner testified that an ethical conflict arose when the Cesards filed the Bar complaint following a disagreement over their refusal to accept a settlement offer. He argued that the specter of Bar sanctions stemming from the complaint loomed over the relationship, involuntarily placing the firm in a position where it could no longer render appropriate legal advice.

We take no issue with the firm's belief that, under the circumstances, its withdrawal from representation in this civil case was prudent.[3] Rule 4-1.7(a)(2) prohibits a lawyer from representing a client if "there is a substantial risk that the representation . . . will be materially limited by the lawyer's responsibilities to another client, a former client or a third person *or by personal interest of the lawyer.*" (Emphasis added). Despite the tendency of courts to apply this rule in the context of multiple client representation, by its own terms Rule 4-1.7 can apply to an attorney's interaction with just one client. Additionally, Rule 4-1.7(b)(1) allows a lawyer to continue representing a client so long as "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client."

Whether the Bar rules required the firm's withdrawal does not end the inquiry. As the trial court correctly opined, "[a]s stated in *Faro*, supra, 'the existence of grounds for withdrawal does not always translate into an attorney's right to be paid for work performed.'" However, the trial court erred in ruling that Rule 4-1.7(b)(1) applied only to situations involving multiple clients' interests. Nothing in that rule's provisions prohibited the firm from falling within one of the *Faro* exceptions.

While no Florida state cases are on point, a federal case from the Southern District of Florida provides guidance on how to resolve these Bar complaint disputes. In *Aldar Tobacco Grp., LLC, v. Am. Cigarette Co.*, No. 08-62018-CIV, 2013 WL 12086251 (S.D. Fla. Feb. 7, 2013), an attorney withdrew from a case, citing a conflict of interest arising from the representation of his clients in another matter and the resulting Bar complaint filed against him. Following the attorney's withdrawal, he asked for a charging lien in the case. *Id.* at *1. When the case later settled, the client objected to the lien, alleging that it entered into an oral contingency fee agreement with the attorney, and that because the attorney withdrew from representation before the contingency occurred, he waived any claim

---

[3] We recognize that the filing of a Bar complaint does not necessarily create a conflict between attorney and client. The Florida Supreme Court has ruled in the criminal context that "the filing of a Bar complaint does not per se constitute a conflict of interest." *Hutchinson v. State,* 17 So. 3d 696, 703–04 (Fla. 2009); *Connor v. State,* 979 So. 2d 852, 861 (Fla. 2007) (denying relief on a conflict of interest claim when the defendant filed a Florida Bar complaint against his counsel because he failed to demonstrate how the complaint impacted the counsel's performance or decision-making). Our court has also perceived "that the filing of the [Bar] complaint creates [no] more actual conflict than the allegations of ineffective assistance of counsel." *Boudreau v. Carlisle,* 549 So. 2d 1073, 1077 (Fla. 4th DCA 1989).

to fees. *Id.* The trial court conducted an evidentiary hearing to determine whether it was the client's conduct which necessitated the lawyer's withdrawal from representation or whether it was the attorney's behavior that was adverse to his client's interests and created the conflict. *Id.* at *2. The court found that the actions of the lawyer, not the client, created the situation, and as a result, the court struck the notice of charging lien and denied the attorney a fee award. *Id.* at *6.

In this case, the trial court granted the firm's motion to withdraw, even though it occurred at the "eleventh hour" before trial. We have no record of the court taking testimony to sort out the factual basis of the Cesards' Bar complaint. Consistent with *Faro*, the trial court had to determine whether it was the Cesards' or the firm's conduct that made continued representation either legally impossible or would have caused the attorney to violate an ethical rule of The Florida Bar. *Faro*, 641 So. 2d at 71. To do so, the trial court had to hear evidence about the Bar complaint's merits. The trial court's only finding below was that the existence of grounds for withdrawal did not translate into the attorney's right to be paid, yet it made no factual findings regarding who bore responsibility for creating the attorney-client rift.

**Award of Fees under Quantum Meruit**

If the firm is entitled to a fee, that award must be based upon quantum meruit but without a lodestar. *See Faulk,* 677 So. 2d at 404.

> To satisfy the elements of quantum meruit, the [firm] must prove that "[it] provided, and the [former client] assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it."

*F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999)). "The measure of damages in a quantum meruit action is the reasonable value of the labor performed and the market value of the materials furnished." *Id.* at 50 (citing *Dean v. Blank*, 267 So. 2d 670, 671 (Fla. 4th DCA 1972)).

The Florida Supreme Court established the proper criteria for determining a quantum meruit recovery in *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz,* 652 So. 2d 366 (Fla. 1995):

[A] quantum meruit award must take into account the actual value of the services to the client. Thus, while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client. *See Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St. 3d 570, 629 N.E.2d 431, 436–437 (1994) (totality of circumstances surrounding each situation should be considered in determining reasonable value of discharged contingent-fee attorney's services in quantum meruit). Application of the factors set forth in Rule Regulating The Florida Bar 4–1.5(b), may provide a good starting point. However, because the factors relevant to the determination of the reasonable value of services rendered will vary from case to case, the court is not limited to consideration of the [*Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985),] factors. The court must consider any other factors surrounding the professional relationship that would assist the court in fashioning an award that is fair to both the attorney and client. For example, the fee agreement itself, the reason the attorney was discharged, actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination. The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court.

*Id.* at 369 (footnotes omitted).

If the evidence shows the Cesards' conduct caused an ethical conflict, i.e., by filing a meritless Bar complaint, then the firm's withdrawal was involuntary, and the firm may be awarded fees based upon a quantum meruit. *See Hernandez*, 306 So. 3d at 363–64 (holding that an attorney was allowed attorney's fees under *Faro* when his withdrawal was caused by client's untoward conduct); *Poletz*, 652 So. 2d at 369. But if the court finds that the firm's actions are to blame for the dispute, the firm's withdrawal is deemed voluntary, and they are not entitled to a fee. *See Faro*, 641 So. 2d at 71; *see also Santini v. Cleveland Clinic Fla.*, 65 So. 3d 22, 30 (Fla. 4th DCA 2011) ("We also find cases from other jurisdictions persuasive in holding that withdrawing from a case because of a bar suspension constitutes withdrawing on one's own volition.").

9

**The Charging Lien**

If the court finds the firm's withdrawal to be involuntary, the court must then consider the validity and application of the charging lien. Proceedings to resolve a charging lien for legal services are equitable in nature; therefore, any applicable equitable defense may be asserted. *See Nichols*, 46 So. 2d at 724.

For an attorney to impose a valid charging lien, four requirements must be met: (1) an express or implied contract between the attorney and the client; (2) timely notice of the lien; (3) either an attempt to avoid the payment of fees or costs or a dispute as to the amount involved; and (4) an express or implied understanding between the parties for the payment of fees or costs from the client's recovery. *See Daniel Mones, P.A.*, 486 So. 2d at 561; *Sinclair*, 428 So. 2d at 1385. We consider each of these requirements in the context of this case.

1) **An express or implied contract between the attorney and the client**

For purposes of addressing the Cesards' opposition to the firm's charging lien, the trial court must decide whether the fee arrangement between the parties was on a contingency basis. Based upon the testimony of the senior partner and the expert, and their unrebutted description of the firm's arrangement with the Cesards, the court found that this case was taken on a contingency basis. We agree.

The arrangement here was somewhat unique because instead of a percentage contingency fee contract based on the amount the Cesards recovered, the agreement provided that the recovery of attorney's fees by settlement or court award is part of the fee agreement. In other words, any earned attorney's fees would not be paid on a percentage of the settlement, which the client obtained in remuneration for their loss, but rather would be set either by a fees settlement with the insurer or by a court-determined award against the insurer. Nonetheless, the firm's recovery of fees was contingent upon a recovery by the Cesards as the triggering event, even if the fees were to be paid by a third party. This satisfies the definition of a contingency fee agreement.

2) **Timely notice of the lien**

The equitable remedy of enforcing a charging lien in the original action is generally preferred to a proceeding at law for the collection of fees.

*Daniel Mones, P.A.*, 486 So. 2d at 561. For the notice of the filing to be timely, "a charging lien must be filed 'before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.'" *Levine v. Gonzalez*, 901 So. 2d 969, 974 (Fla. 4th DCA 2005) (quoting *Heller v. Held*, 817 So. 2d 1023, 1025–26 (Fla. 4th DCA 2002)). Such proper notice is necessary to perfect the lien. *Baker & Hostetler, LLP v. Swearingen*, 998 So. 2d 1158, 1161 (Fla. 5th DCA 2008). The filing of a charging lien typically occurs before the outcome of the case is known unless the trial court reserves jurisdiction to address attorney's fees. *See id.* at 1161–62. Here, because the firm filed and pursued its charging lien after the case was settled but before it was dismissed, it gave timely notice to the Cesards.

### 3) Either an attempt to avoid the payment of fees or costs or a dispute as to the amount involved

As it happens in many such disputes, this case presents both. As demonstrated in the underlying proceedings, the Cesards attempted to avoid paying their former counsel the contingency fee and costs described in the parties' agreement. The Cesards also disputed the amount of any award of attorney's fees to the firm; that is, to the extent that the firm is entitled to a fee award, the Cesards argue the fee award may not be offset from their settlement and certainly not in the amount requested.

### 4) An express or implied understanding between the parties for the payment of fees or costs from the client's recovery

Although the firm could not produce the parties' signed fee agreement, the firm presented to the trial court a sample unsigned fee agreement containing the same terms which the firm claimed were in the signed fee agreement. Among other things, this sample fee agreement stated in pertinent part, "Any attorney's fees earned by attorney *will not be paid out of any money Client recovers from Client's damages but will instead be paid separately by Client's opponents, either by settlement or court award.*" (Emphasis added). This fee agreement implies an understanding between the Cesards and the firm that payment is dependent upon recovery. *See Baucom*, 428 So. 2d at 1385 (the understanding required to meet this requirement is that "the payment is either *dependent upon recovery* or that payment will come from the recovery") (emphasis added).

### Attachment of the Charging Lien

Under Florida law, a charging lien attaches only to the "tangible fruits" of the attorney's services. *See Rudd*, 960 So. 2d at 887 (quoting *Mitchell v. Coleman*, 868 So. 2d 639, 641 (Fla. 2d DCA 2004)); *Correa v.*

*Christensen*, 780 So. 2d 220, 220 (Fla. 5th DCA 2001). "If the litigation produces no judgment of monetary value for the client, the court may not impose a charging lien for the attorney's benefit." *Walia*, 28 So. 3d at 989.

To support a charging lien, a firm must do more than assert it has provided services. "[T]he services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *Id.* (quoting *Rudd*, 960 So. 2d at 887). Here, while the firm's efforts may have assisted the Cesards in ultimately obtaining a favorable settlement, the trial court has not made sufficient findings as to whether the firm's services created tangible fruits for the client's benefit to which the charging lien may attach. *Id.*; *see Joel M. Weissman, P.A. v. Abou-Sayed*, 107 So. 3d 1163, 1164 (Fla. 4th DCA 2013) ("Whether an attorney's services produced 'tangible fruits' is an issue of proof.").

**Attorney's Fee Recovery**

As anticipated by its fee contract, the firm agreed its compensation would be satisfied only through attorney's fees paid by the insurer through settlement or by court order. The trial court correctly found that nothing in the parties' agreement supported the claim that the Cesards pay a percentage of their loss settlement to the firm, because the parties' fee agreement did not provide that they were obligated to pay a fee from those proceeds. As the trial court noted, the contract states that attorney's fees *are paid by the insurance carrier* upon successful conclusion of the case. In such cases, the firm would not ordinarily receive its fee out of the clients' settlement upon withdrawal if the firm did not contract for nor expect a fee from those funds upon the successful conclusion of the case.

However, because proceedings to resolve charging liens are resolved by courts of equity, *see Nichols*, 46 So. 2d at 724, the equitable defense of unclean hands may be asserted against a party challenging a charging lien. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-7014-CV, 2004 WL 5500705, at *15 (S.D. Fla. Oct. 26, 2004). As a result, if a party is found to have unclean hands, the court has more latitude to fashion its remedy. *See Ocean View Towers, Inc. v. First Fid. Sav. & Loan Ass'n*, 521 So. 2d 325, 326 (Fla. 4th DCA 1988). "It is certainly beyond question that 'one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim.'" *Id.* (quoting *Roberts v. Roberts*, 84 So. 2d 717, 720 (Fla. 1956)).

Because the firm had no role in negotiating the terms of the settlement between the Cesards and their insurer, the firm is not bound by any

agreement within that settlement apportioning how much of the total amount is loss compensation and how much is for fees and costs. *See ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1269 (S.D. Fla. 2020). At the evidentiary hearing, the Cesards did not present any evidence that the insurer paid a separate sum representing fees and costs, nor any agreement indicating whether the settlement amount was to be apportioned to offset fees and costs. Consequently, the firm is not limited to having any fee award satisfied solely out of monies that may have been part of an agreed-upon apportionment.

**Conclusion**

Although the trial court's order treated the firm's withdrawal as voluntary without making any findings of fact adduced from evidence to support that conclusion, the trial court nonetheless awarded compensation in the form of $9,000.00 in costs as well as $6,250.00 for what it said was "the value of the benefits provided as reduced by the detriment incurred for the 11th hour, perhaps avoidable, withdrawal." This was error because the law provides that a fee award is applicable only where a court finds the attorney's withdrawal to be involuntary. *Faro*, 641 So. 2d at 71. As previously stated, this fee must be "based upon a *quantum meruit* following an evidentiary hearing without a lodestar." *Faulk*, 677 So. 2d at 404; *see Poletz*, 652 So. 2d at 368–69.

The trial court's order also failed to include any findings of fact indicating how it arrived at this amount of compensation or to clearly indicate that it was based on quantum meruit. Based on the record before us, we are unable to resolve the inconsistency between the trial court's finding of voluntary withdrawal and its decision to award fees.

For these reasons, we reverse the trial court's order and remand for an evidentiary hearing to determine (1) whether the firm's withdrawal was voluntary or involuntary, and (2) if the firm's withdrawal was involuntary, whether the firm's charging lien attaches.

*Reversed and remanded with instructions.*

LEVINE and KUNTZ, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

13