490 So.2d 159 (1986)
STABINSKI, FUNT & DE OLIVEIRA, P.A., Appellant,
v.
LAW OFFICES OF FRANK H. ALVAREZ, Appellee.
No. 85-2125.
District Court of Appeal of Florida, Third District.
June 17, 1986.
Rehearing Denied July 21, 1986.
Stabinski, Funt & De Oliveira and Norman Funt, Miami, for appellant.
Frank U. Pintado, Miami, for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
The appellant law firm, Stabinski, Funt & De Oliveira, P.A. ("Stabinski") was discharged without cause by its clients, the plaintiffs in a personal injury action. After the case was settled for $19,000 by a successor *160 attorney, Frank Alvarez,[1] the lower court conducted a non-jury trial to determine the amount of the reasonable fee to which Stabinski was entitled for its pre-discharge services. See Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982). On this appeal from an order which simply determined that it "recover $1,500," Stabinski contends only[2] that the cause must be remanded for the trial judge to "set forth specific findings" to support its fee award as allegedly required by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985).[3] See Boyle v. Boyle, 485 So.2d 879 (Fla.2d DCA 1986) (fee award under § 61.16 in domestic case remanded for Rowe findings); see also Lyons v. Lyons, 486 So.2d 77 (Fla.2d DCA 1986) (domestic case indicating that Rowe findings required).
We reject this contention upon the holding that Rowe and the federal lodestar method it adopts apply only to fees imposed ancillary to the primary action against a non-client either under common law principles, see Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973) (Lindy I) (award of fees from common fund created through efforts of attorney), or, as in Rowe itself and in Boyle and Lyons, pursuant to statutory authorization; they do not affect the assessment of attorney's fees which are due, as here, as damages for breach of an agreement for the payment of such fees by the client or other contracting party. This conclusion is in accordance with both the entire thrust of the Rowe decision  which seeks to protect third parties from excessive awards over which they have no contractual or adversarial control  as well as with much of its specific language. Thus, the court repeatedly refers, for example, to a situation in which "someone other than the client may pay the fee," Rowe, 472 So.2d at 1150; to "the services of the prevailing party's attorney," Id. at 1150; and to "awarding a statutorily-directed reasonable attorney fee [in which] the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney." Id. at 1151. Our determination is supported also by the comprehensive treatment of the federal lodestar rule in Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306 (2d Cir.1985) (Friendly, J.),[4] which persuasively sets out the history of the doctrine and the reasons for its establishment  ones which do not apply to the present situation:
In City of Detroit v. Grinnell Corp., 495 F.2d 448 (2 Cir.1974), this court adopted the Lindy I approach;[5] the court made clear that it also was dealing only with cases where an attorney had conferred a benefit upon a class of plaintiffs with whom he had no direct relationship and was seeking fees in his own right. Id. at 468-69. The court was equally clear that the primary reason for adopting the lodestar method was the hope that it would produce lower awards of attorneys' fees in cases involving large *161 settlements since previous awards in such cases had tended to be based on a percentage of the recovery. Id.

It was natural that the lodestar method should find its way into fee computation under statutes such as 42 U.S.C. § 1988 ... and § 796(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k).... Here too there is no client to put on the brakes since the fees paid by the defendant neither come out of nor reduce the plaintiff's recovery. This also is true in actions under the antitrust laws where there is a private client or a group of clients, since there too the fee is an add-on, and the client has no interest in keeping it within reasonable bounds... . Moreover, fee shifting statutes also authorize awards of attorneys' fees in cases involving only injunctive or declaratory relief where the absence of any monetary recovery makes inapplicable other methods of fee computation, particularly the percentage-of-recovery method, which very often had proved to be the basis upon which fees were awarded... . Finally, the lodestar method has the advantage of eliminating or at least mitigating the problem involved in plaintiffs' attorneys settling derivative or class actions and seeking to maximize the portion of the total amount paid by defendants that goes to attorneys' fees at the expense of their clients while the defendants simply do not care. [emphasis supplied] [citations omitted]
Id. at 318-19. Indeed, Peter Fabrics holds specifically that the lodestar approach is not applicable even in indemnity actions in which the indemnitor is contractually obliged to pay the indemnitee's reasonable attorney's fees, stating
We see no sufficient reason to mandate application of the lodestar method in a case like this one, where the fee is not "court awarded" in the sense of imposing an obligation, but is rather a filling in of the terms of a contract.
Id. at 319.
Finally, we think the correctness of our conclusion is also demonstrated by the plain non-applicability to the present type of case of the particular aspect of Rowe now directly in issue. The requirement that the "trial judge" or "trial court ... set forth specific findings," Rowe, 472 So.2d at 1151, refers to the contents of an order necessarily rendered after a non-jury proceeding, such as the allotment of fees from a common fund or under a particular "fee shifting" statute. But first party disputes between attorney and client and under indemnity agreements are ordinary damage actions at law which are subject to trial by jury. Machado v. Foreign Trade, Inc., 478 So.2d 405 (Fla.3d DCA 1985); Barranco, Darlson, Daniel & Bluestein, P.A. v. Winner, 386 So.2d 1277 (Fla.3d DCA 1980); Sork v. United Benefit Fire Insurance Co., 161 So.2d 54 (Fla.3d DCA 1964). By definition, a jury is incapable of rendering a "verdict" in the form prescribed by Rowe, and there is surely no indication that the supreme court intended to impose such a requirement. The fact that the component of Rowe now before us simply cannot, in so many instances, be applied to these kinds of attorney's fee controversies confirms what we have already concluded, that the lodestar method as a whole does not extend to them.
Affirmed.
NOTES
[1] Although both lawyers had a forty percent contingency fee contract, Alvarez reduced the gross fee to $7,000. It was commendably agreed below that Stabinski's fee would not be assessed as an additional one against the clients, but would come off the top of the $7,000, with Alvarez retaining the difference. Accordingly, while Stabinski's claim was nominally against the clients, the real adversaries below were the respective attorneys, as reflected by the fact that Alvarez has been named as the appellee in this court.
[2] The appellant does not  and, because there is no trial transcript, could not, Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979)  claim error in the amount of the award.
[3] determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings. If the court decides to adjust the lodestar, it must state the grounds on which it justifies the enhancement or reduction.
Rowe, 472 So.2d at 1151.
[4] It is well settled that federal decisions are most helpful in considering questions under equivalent, or, as here, identical Florida law. See St. Pierre v. Public Gas Co., 423 So.2d 949 (Fla.3d DCA 1982); Frantz v. Golebiewski, 407 So.2d 283 (Fla.3d DCA 1981).
[5] Both Grinnell and "Lindy I" were cited as seminal supporting authorities in Rowe. 472 So.2d at 1150.