652 So.2d 366 (1995)
SEARCY, DENNEY, SCAROLA, BARNHART & SHIPLEY, P.A., Petitioner,
v.
Paige N. POLETZ, etc., et al., Respondents.
No. 83375.
Supreme Court of Florida.
March 16, 1995.
Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for petitioner.
F. Wallace Pope, Jr. of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clear-water, for respondents.
KOGAN, Justice.
We have for review Searcy, Denney, Scarola, Barnhart & Shipley, P.A., v. Poletz, 646 So.2d 209 (Fla. 2d DCA 1994), which certified conflict with Stabinski, Funt & De Oliveira, P.A. v. Law Offices of Frank H. Alvarez, 490 So.2d 159 (Fla.3d DCA), review denied, 500 So.2d 545 (Fla. 1986), and Faro v. Romani, 629 So.2d 872 (Fla. 4th DCA 1993), quashed *367 on other grounds, 641 So.2d 69 (Fla. 1994).[1] We are asked to clarify the proper criteria for determining the quantum meruit recovery of an attorney discharged without cause prior to resolution of the client's case.
The issue comes to us in the following context. Paige Poletz was born with severe brain damage. Paige's parents hired the firm of Searcy, Denney, Scarola, Barnhart, & Shipley (the Searcy firm or Searcy) to bring a medical malpractice action against several health care providers, and executed a contingent fee agreement in which they agreed to pay Searcy forty percent of the recovery. The case was assigned to Phillip Taylor, an associate with the firm. After approximately three hundred and forty hours were spent preparing the Poletzes' case for trial, Taylor resigned from the Searcy firm and joined a new law firm. The Poletzes discharged the Searcy firm and hired Taylor's new firm to handle their case. Searcy filed a retaining lien for costs expended and a lien for attorney's fees and costs. Searcy refused to provide the new firm with a copy of the Poletzes' file and work product on the case. It also instructed its experts not to speak to substituted counsel about the case. When it was determined that Taylor acted improperly by encouraging the Poletzes to discharge Searcy, the firm was reinstated as counsel for a short period. Taylor then encouraged the Poletzes to dismiss the Searcy firm and retain a third law firm, which he later joined. Searcy again filed a lien for attorney's fees and a retaining lien for costs expended. The third firm effected a partial settlement with one of the defendants for $1,000,000.00.
In connection with its charging lien, Searcy maintained that because it had done substantially all of the work necessary to effect the settlement, its quantum meruit recovery should be all or a substantial portion of the forty percent contingency fee agreed upon. Alternatively, it argued that its fee should be determined by application of the factors set forth in this Court's decision in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), modified, Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), including application of a "contingency risk multiplier." The Poletzes took the position the firm's fee should be determined by using the Rowe factors but no contingency risk multiplier should be applied.
The trial court accepted the Poletzes' position. Applying the Rowe criteria, the court came up with a reasonable hourly rate which it multiplied by the hours reasonably expended, for an award of $78,195.00. Prior to entry of the order on the charging lien, the successor firm settled the Poletzes' claim against the hospital[2] and waived its claim for fees in connection with the partial settlement. The Searcy firm appealed.
The issue on appeal was whether the trial court erred in computing the firm's quantum meruit recovery as a straight hourly fee using the Rowe criteria. The firm urged the district court to recede from its prior decisions which hold that the Rowe "lodestar" method must be used to determine attorney fees recoverable under a quantum meruit theory. See Rood v. McMakin, 538 So.2d 125 (Fla.2d DCA 1989); Riesgo v. Weinstein, 523 So.2d 752 (Fla.2d DCA 1988); see also Barton v. McGovern, 504 So.2d 457 (Fla. 1st DCA 1987) (in determining the quantum meruit recovery to be awarded an attorney discharged without cause before conclusion of case the court must utilize the criteria set forth in Rowe); Boyette v. Martha White Foods, Inc., 528 So.2d 539 (Fla. 1st DCA), review denied, 538 So.2d 1255 (Fla. 1988) (Rowe lodestar method, without contingency risk multiplier, should be applied to determine discharged attorney's quantum meruit recovery).
Relying on its prior decisions in Rood and Riesgo, the district court affirmed the trial court's calculation of the award. However, it certified conflict with the decisions of the Third and Fourth District Courts of Appeal that hold the Rowe method of assessing attorney's fees inapplicable to the determination *368 of attorney's fees due as damages for breach of an agreement for payment of fees by a client or other contracting party. Stabinski, 490 So.2d at 160; Faro, 629 So.2d at 874. We accepted jurisdiction to resolve the conflict.
In Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982), we addressed the proper basis for compensating an attorney discharged without cause after performing substantial legal services under a valid contract of employment. We held that under such circumstances, the attorney is entitled to the reasonable value of the services rendered on the basis of quantum meruit, but recovery is limited to the maximum fee set in the employment contract. 409 So.2d at 1017. We further held that in contingency fee cases, the discharged attorney's cause of action accrues upon the successful occurrence of the contingency. Id. at 1022. We explained that the totality of the circumstances surrounding the professional relationship should be considered in computing the reasonable value of the services and gave examples of relevant considerations:
In computing the reasonable value of the discharged attorney's services, the trial court can consider the totality of the circumstances surrounding the professional relationship between the attorney and client. Factors such as time, the recovery sought, the skill demanded, the results obtained, and the attorney-client contract itself will necessarily be relevant considerations.
Id.
We now are asked to decide whether the "lodestar" method of computing reasonable attorney fees as adopted by this Court in Rowe should be applied in this context. We agree with the Third and Fourth District Courts that it should not.
In Rowe, we adopted the "lodestar" method to establish a fair and reasonable attorney fee in those cases where the fee will be paid by someone other than the client who received the services. See In re Estate of Platt, 586 So.2d 328, 333 (Fla. 1991); Rowe, 472 So.2d at 1150. Under this approach the court must first determine the number of hours reasonably expended in providing the service. Next, the court must determine a reasonable hourly rate for the services rendered. In establishing the hourly rate, the court must take into account all the factors for determining a reasonable fee set forth in the Code of Professional Responsibility,[3] except the "time and labor required," "the novelty and difficulty of the question involved," which will be considered in setting the number of hours reasonably expended, the "results obtained," and "whether the fee is fixed or contingent." The lodestar figure is produced by multiplying the number of hours reasonably expended by the reasonable hourly rate. Because a reasonable hourly rate is determined based on the assumption that the attorney will be paid regardless of result, the contingency risk "multiplier" was created to compensate attorneys for those cases where there was a risk of nonpayment. The Rowe approach was intended to result in "a uniform objective basis for the award of attorney's fees in situations where the payor has no part in the fee arrangement." 586 So.2d at 334. It was never intended to control in cases where the disputed fee will be paid by the client or other contracting party. Accord Restatement (Third) of The Law Governing Lawyers, Tentative Draft No. 4 § 51 (April 10, 1991) (fair value attorney fee recoverable in quantum meruit is not measured by the standards applied when fees are awarded opposing party under fee-shifting statute or doctrine). In Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828, 835 (Fla. 1990), we recognized that, even in cases where attorney fees are to be paid by a nonclient, the criteria for calculating a reasonable fee will vary with the class of case. Based on that recognition, we modified our decision in Rowe accordingly.
As the Third District Court of Appeal recognized, Rowe and the federal lodestar method it adopts were intended to apply "to fees imposed ancillary to the primary action against a non-client." Stabinski, 490 So.2d at 160. The conventional lodestar approach is ill-suited for the task of assessing attorney's fees due as damages for breach of an *369 agreement for the payment of fees because it does not allow for consideration of "the totality of the circumstances surrounding the professional relationship." Rosenberg v. Levin, 409 So.2d at 1022. Unlike an award of attorney's fees to a prevailing party, a quantum meruit award must take into account the actual value of the services to the client. Thus, while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client. See Reid, Johnson, Downes, Andrachik & Webster v. Lansberry, 68 Ohio St.3d 570, 629 N.E.2d 431, 436-437 (1994) (totality of circumstances surrounding each situation should be considered in determining reasonable value of discharged contingent-fee attorney's services in quantum meruit). Application of the factors set forth in Rule Regulating The Florida Bar 4-1.5(b),[4] may provide a good starting point. However, because the factors relevant to the determination of the reasonable value of services rendered will vary from case to case, the court is not limited to consideration of the Rowe factors. The court must consider any other factors surrounding the professional relationship that would assist the court in fashioning an award that is fair to both the attorney and client. For example, the fee agreement itself, the reason the attorney was discharged, actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client may be relevant to that determination.[5] The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court.
However, here, the trial court erred as a matter of law by failing to consider the totality of the circumstances present in this case, instead considering only the time reasonably expended and the reasonable hourly rate for the services, as determined under the principles set forth in Rowe. Accordingly, we quash the decision under review and remand for further proceedings consistent with this opinion. We approve Stabinski and Faro to the extent they hold Rowe inapplicable in this context and disapprove Rood, Riesgo, Barton, and Boyette to the extent that they conflict herewith.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
[2] Because this settlement occurred between the trial and the entry of the judgment, the record does not reflect the amount of the settlement.
[3] Now found in Rule Regulating The Florida Bar 4-1.5(b).
[4] Rule Regulating The Florida Bar 4-1.5 provides the following factors to be considered in determining a reasonable fee:

(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for the legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
[5] In this case, the trial court's finding that the Searcy firm refused to give the Poletz file to the successor firm may affect the value of the services rendered to the client. See Riesgo v. Weinstein, 523 So.2d 752 (Fla.2d DCA 1988) (in determining reasonable value of services rendered prior to discharge, trial court should consider the attorney's failure to turn client's file over to new counsel and determine whether refusal was detrimental to client by causing new counsel to duplicate work).