SHARP, W., J.
Hallowes appeals from a final judgment rendered after a non-jury trial, which denied his request for an award of attorney fees against Ronald and Barbara Bedard, based on quantum meruit. Hallowes represented the Bedards in prosecuting their claim against First Union Securities and others for investment losses, beginning with reviewing their letter claim form and handling the arbitration of their claim under NASD (National Association of Securities Dealers) Code of Arbitration Procedure through arbitration, a process that lasted a little over one year. The trial judge ruled that Hallowes was not entitled to recover attorney fees from the Bedards for two reasons: first, that Hallowes’ expert witness to establish the reasonableness of fees to be awarded, based on quantum meruit, did not take into consideration all of the criteria required pursuant to Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366 (Fla.1995); and second, that the Bedards had good- reason to believe Hallowes undertook their representation with the understanding and expectation that he would be paid for his services solely by an award imposed against First Union, et al, as a result of the arbitration. Because both findings are supported by competent, substantial evidence, even though in dispute, we affirm.
The circumstances and facts in this case are highly unusual. Hallowes admitted that he had never, in his lengthy legal career of forty years, handled a client representation in such a manner. He testified he has never had a case like this one, where he did not have a written contract, never discussed his hourly rate, and never provided a bill to his client until the legal matter had been concluded.
He first met Ronald Bedard after being assigned to play golf with him at the Oak-ridge Country Club. When Hallowes told Bedard he was an attorney, Bedard told him he and his wife were in the process of filing a claim with NASD to seek a recovery against First Union for investment losses. Hallowes offered to assist.
Bedard pointed out that on the letter form he intended to file there was a box to check to request the arbitration panel to award attorney fees. Bedard told Hal-lowes that if he wanted to assist him, he would check the box and claim attorney’s fees. Bedard testified he told Hallowes that his fees would be paid on that basis. Hallowes said: “Well, yeah, that would be fine.”
This conversation took place either in the parking lot at the Country Club, or in the Bedards’ home, when Hallowes and his wife happened to stop by while riding their bicycles, one weekend shortly after Bedard and Hallowes first met. Bedard signed a document, which he sent to NASD, indicating Hallowes was representing him in this matter and Hallowes began work on the case.
Hallowes testified that a lot of his review of records and work was done at the Bedards’ home, sitting at their dining room table and at a Burger King restaurant, and discussions about the claim took place while they were playing golf. Hal-lowes never told the Bedards what his hourly, rate (fee) charge would be ($250.00), or the fee he would charge them per day for conducting the case for them at arbitration ($3,500.00). He never sent them an interim billing or statement until the arbitration had been concluded. They never signed a written agreement for Hal-lowes’ services.
*956 As time progressed, Hallowes became uncomfortable with the fact that he had no written contract to cover his representation and fees. He presented the Bedards with two or three contingency fee contracts, one very shortly before the arbitration proceeding was scheduled. Each time Bedard refused to sign a contingency fee contract. He testified he reminded Hal-lowes that he had agreed to seek his fees from First Union and that he (Bedard) would not pay him out of his pocket: “I made it very clear.”
Hallowes testified he was upset by the failure of the Bedards to sign a written contingency fee contract. He tried to get them “to come up with something,” but “we never did.” He did not want to press them, because they were friends, nor did he want to withdraw immediately before the arbitration. He was “resigned.” At the end, he felt “what the heck ... just go ahead and ... get it over with.” In turn, Bedard testified that after he rejected the last contingency fee • contract, he feared that Hallowes might not appear for the arbitration hearing. Bedard was prepared to proceed on his own.
The arbitration decision awarded the Bedards $86,546.83, as compensatory damages, plus interest, bringing the total award to $106,834.01. The Bedards had sought compensation for $264,000 in investment. losses, punitive damages of $235,000, attorney’s fees and costs. The costs were $10,000.00.[1] The arbitration panel denied punitive damages, attorney’s fees and costs.
Hallowes admitted he had not researched how to obtain an attorney’s fee award in an arbitration proceeding and as a result, the arbitration panel could not have awarded attorney fees, against First Union. Bedard was also unaware he could have sought fees against First Union by filing suit in circuit court, after the arbitration award was final.[2] Accordingly, Hal-lowes failed to apply to the circuit court to have the award certified and to pursue his claim for attorney’s fees in that venue.
1. Expert Testimony to Establish Attorney’s Fees Based on Quantum Meruit.
The Searcy case is the Florida Supreme Court’s most current direction to the Florida Bar and courts concerning the criteria to be used in determining a reasonable fee for an attorney in a quantum meruit situation. That is to say, when there is no controlling contract between the client represented and the attorney, and the attorney is seeking fees against the client. In Searcy, there had been a contingency fee contract, but the attorney was discharged without cause prior to the resolution of the case. But the Searcy case has been applied to other situations where there was no written contract. See Frank J. Pepper, Inc. v. Vining, 783 So.2d 1160 (Fla. 3d DCA 2001).
The Searcy court said that the lodestar method of calculating fees,[3] should not be applied if the fee is to be paid by the client or other contracting party. Reasonable time and rate are factors, and Florida Bar Rule 4-1.5(b) is a starting point. But the criteria should encompass all relevant factors surrounding the professional relationship, including the actions *957 taken by the attorney, whether and to what extent they benefitted the client, the skill demanded and demonstrated, and the results obtained. It concluded that the determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded, are matters within the sound discretion of the court. In Searcy, the court overturned the trial court’s attorney’s fee award because it failed to “consider the totality of the circumstances present in this case, considering only the time reasonably expended and the reasonable hourly rate for the services, as determined under the principles set forth in Rowe. ” 652 So.2d at 369.
In this case, Hallowes’ expert witness testified as to the reasonableness of Hal-lowes’ hourly rate charged ($250.00 per hour), the daily rate for handling the arbitration proceedings, and the time spent on the case, resulting in the total of $39,046.10.[4] He based his opinion primarily on the lodestar method, but did not add any multipliers. He also added he had considered the case law as well as the Code of Professional Responsibility.
However, the expert admitted he did not consider that Hallowes had not periodically billed the Bedards during the more than year it took to pursue the claim through arbitration, and that Hallowes had not communicated to them his billing rate at any time prior to presenting them with his final bill after the arbitration had concluded. He also did not consider that Hal-lowes had not previously handled a NASD arbitration proceeding. Nor did he opine about the benefit and quality of the legal services rendered in this case. Was this a good result or not for the Bedards? The expert did not address this. Nor did he consider the fact that Hallowes failed to apply to the circuit court for an award of attorney’s fees following the arbitration proceedings. See D.H. Blair & Co., Inc. v. Johnson, 697 So.2d 912 (Fla. 4th DCA 1997).
In addition, the expert witness did not take note of the fact that Hallowes had not represented the Bedards prior to this claim and that his professional relationship began and was continuously intermingled with their golfing, social-friend relationship. Hallowes testified he knew he should have obtained a contract with the Bedards for his representation of them in connection with their arbitration claim. He was understandably uncomfortable with this situation, but he continued because they were friends.
II. Quantum Meruit on the “Merits.”
The basis for a quantum meruit award is essentially an equitable one. One person should not benefit from the work efforts of another under circumstances where the person doing the work has the reasonable expectation of being paid by the person benefitted, and the person ben-efitted has a reasonable expectation of paying for the work. Osteen v. Morris, 481 So.2d 1287, 1289-90 (Fla. 5th DCA 1986). The trial court found that the Be-dards accepted Hallowes’ services and work under the reasonable belief that he would be paid for his services through a fee awarded by the arbitration panel against First Union, and not by them.[5] It also found that Hallowes could voice no *958 explanation as to the foundation of his belief that the Bedards would pay him a reasonable fee for his services rather than looking to the arbitration award.[6] These findings, although disputed by Hallowes, are supported by the testimony of the Bedards at trial and Hallowes’ admissions.
Given these findings by the trial court, there is no basis upon which to premise a quantum meruit award, even if the expert witness had based his opinion on the required criteria. Indeed, the expert witness admitted that it is possible for an attorney to agree to represent a client for free, or to look solely for the payment of fees from an opposing party. If a lawyer agrees to only accept fees that (hopefully) will be awarded against an opposing party, that can be binding on the lawyer. The expert witness concluded that Hal-lowes should be paid a reasonable sum for the work he did for the Bedards, unless he agreed to do it for nothing. Or, as suggested by this record, if he agreed to look only to the arbitrator’s fee award. The trial court, based on this record, concluded that was what happened in this case. We cannot disagree.[7]
In addition, we are also troubled by the fact that Hallowes did not research how a party can obtain an attorney fee award in an arbitration proceeding, and how such an award can be sought in the circuit court following arbitration.[8] Equity would require that Hallowes effectively and to the best of his ability, pursue the possibility of obtaining a fee award from First Union before seeking it from the Bedards.
AFFIRMED.
THOMPSON and MONACO, JJ., concur.

.It also appears from prior pleadings that the Bedards had paid $3,800.00 for the services of an expert witness, but because necessary documentation was not submitted prior to arbitration, the documents and the expert were excluded at the arbitration proceeding.

. See D.H. Blair & Co., Inc. v. Johnson, 697 So.2d 912 (Fla. 4th DCA 1997).

. Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985).

. The bill included 106 hours of work billed at $250.00 per hour, three and one-half days for the arbitration sessions at $3,500 per day, and 940 miles for travel.

. The court ruled: "It is not difficult to understand why the Bedards believed [Hal-lowes] had agreed under these circumstances that he would accept such fee as might be awarded by the arbitration panel.”

. The court ruled:
Mr. Hallowes indicated that he continued to help the Bedards believing that he would be paid a reasonable fee for his services. However, no explanation was offered by Mr. Hal-lowes as to the foundation for such a belief.

. Porzio v. Porzio, 760 So.2d 1075 (Fla. 5th DCA 2000); Patrick v. Christian Radio, 745 So.2d 578 (Fla. 5th DCA 1999); Love PGI Partners, LP v. Schultz, 706 So.2d 887 (Fla. 5th DCA 1998), approved, 731 So.2d 1270 (Fla.1999).

.The court found: "[Hallowes] offered no explanation as to why fees were not sought in a Circuit Court proceeding.”