952 So.2d 635 (2007)
Scott R. JAY, Appellant,
v.
Warren R. TRAZENFELD; and Warren R. Trazenfeld, P.A., Appellees.
No. 4D06-1711.
District Court of Appeal of Florida, Fourth District.
April 4, 2007.
*636 Ronald S. Lowy, Ronald S. Lowy, P.A., Miami, for appellant.
Warren R. Trazenfeld, Warren R. Trazenfeld, P.A., Miami, for appellee.
FARMER, J.
Two attorneys of different firms hired as co-counsel dispute the division of fees due under a written contingency fee agreement that said:
"[Clients] hereby retain and employ Warren R. Trazenfeld, P.A., and Scott Jay, Esq., to pursue a legal malpractice claim against Spence, Payne, et al. and all other culpable parties. As compensation for the services rendered by our attorneys, they will be paid from the gross proceeds of any money collected a contingent fee based upon the following percentage: a) 40% of any recovery up to $1 million; b) 30% of any recovery between $1-2 million; c) 20% of any recovery in excess of $2 million. . . ." [e.s.]
This fee agreement makes no distinction as to the responsibility of each attorney, and thus both appear to be equally responsible to the client for the representation. Obviously there was a recovery in the malpractice action. The total fee due from the client was deducted from the client's share of the proceeds and part now lies in escrow. The issue is how to divide the fee between these joint counsel.
The subject of the claim for legal malpractice identified in the fee agreement was a prior tort suit in which Spence Payne had represented the client. That litigation resulted in an unsatisfied money judgment. Jay was then retained by the client to attempt collection of the judgment. During this representation, Jay discovered evidence of the malpractice claim against Spence Payne and enlisted Trazenfeld to participate in the malpractice action. Then during the malpractice litigation, Trazenfeld advanced a claim that Jay also had committed legal malpractice in his prior handling of the case, leading to the client formally terminating Jay from further representation. Jay was then added as a defendant in the malpractice litigation. But the trial court dismissed the claim against Jay. In an appeal from that decision we affirmed the dismissal, saying that "[u]nder no interpretation of these facts can Jay be liable for [malpractice]. . . ." Kates v. Robinson, 786 So.2d 61, 65 (Fla. 4th DCA 2001).
On remand, the case against Spence Payne went to trial and resulted in a recovery of $485,000. After clients received their net proceeds of the recovery, Trazenfeld claimed the entire fee due under the agreement, nearly $218,000. Jay filed a notice of charging lien claiming 25% of the fee. The trial court dissolved the charging lien, citing our previous decision, the effect of which is that Jay was determined not to be entitled to any part of the fee. He appeals and we reverse.
The division of the fee is governed by the written fee contract. It is not ambiguous. It clearly provides for joint sharing between Trazenfeld and Jay without specifying that the share of each is anything other than an equal share. Although Jay was fired when Trazenfeld accused him of malpractice, our previous decision implies that his termination should *637 be deemed unjustified. As between him and Trazenfeld, Jay must be held without cause or blame. The consequence is that under the clear text of the agreement Jay would seem to be entitled to a fixed share of 50% of the fee.
But Jay does not seek an equal share of the fee. In a striking illustration of ethical punctilio despite financial disadvantage, he explains in his argument to this court that he and Trazenfeld had an oral understandingnot then committed to writingthat Trazenfeld would be primarily responsible for the malpractice litigation and that he would be only secondarily responsible. Trazenfeld, he says, was designated to be lead counsel for trial, and he would be involved in pretrial matters and handle client communication. Thus, in spite of the clear text of the written fee agreement, Jay has requested only 25% of the fee as a secondary attorney under the Bar rule governing the division of contingency fees. See Rule 4-1.5(f)(4)(D), R. Reg. Fla. Bar. It is manifest to us that his charging lien is effective against Trazenfeld to enforce that claim.
We briefly address the legal argument consuming much of the attention of these lawyers and the trial judge. Trazenfeld argued that Jay's only claim, if any, should be in quantum meruit under Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982). Because Jay had failed to keep contemporaneous time records, Trazenfeld argued, Jay forfeited any right to a share under Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985). Rowe was cited for the proposition that time records are indispensable to a division of the fee. Under the circumstances of this case we reject this argument.
The rule of Rosenberg v. Levin applies to fees due from the client to the attorney when counsel has withdrawn before the occurrence of the contingency. By the express language of Rosenberg v. Levin the quantum meruit rule fixes the client's obligation only when counsel has been discharged without cause before the contingency has occurred.[1] There is no dispute in this case as to the client's fee which has actually been paid by the client. As we have noted, the written fee agreement provides that co-counsel are jointly owed the fee. And because the contract did not specify otherwise, the division of the fee would ordinarily be equalthus undifferentiated and fixed. Quantum meruit under Rosenberg v. Levin does not apply.
As to the failure to keep contemporaneous time records, there are circumstances *638 when such records would not affect the result. In Searcy Denney Scarola Barnhart and Shipley v. Poletz, 652 So.2d 366 (Fla.1995), the court explained:
"In Rowe, we adopted the `lodestar' method to establish a fair and reasonable attorney fee in those cases where the fee will be paid by someone other than the client who received the services. . . .
"The conventional lodestar approach is ill-suited for the task of assessing attorney's fees due as damages for breach of an agreement for the payment of fees because it does not allow for consideration of `the totality of the circumstances surrounding the professional relationship.'" [e.s.]
652 So.2d at 368, 368-69. Here where the fee agreement effectually makes the division, it would serve no purpose to keep such records to establish the share of each. In this kind of joint representation, counsel may recognize from the beginning of their undertaking that the amount of time spent by either will not control the division. They may even anticipate that the time of each will be unequal, but their business decision in structuring the fee division will control. As long as such a division is not unreasonable and does not violate the regulatory rules of The Florida Bar, there is no good reason why courts should resort to time records to divide the fee.
In this case, attorney Jay has been forthcoming and candid in acknowledging that by oral understanding his share was to have been only 25%.[2] We commend him for his candor.
The order dissolving the charging lien is quashed. On remand the trial court shall enforce the charging lien against Trazenfeld to the extent of 25% of the total fee.
Reversed.
STONE and MAY, JJ., concur.
NOTES
[1] As the Rosenberg court explained:

"There are two conflicting interests involved in the determination of the issue presented in this type of attorney-client dispute. The first is the need of the client to have confidence in the integrity and ability of his attorney and, therefore, the need for the client to have the ability to discharge his attorney when he loses that necessary confidence in the attorney. The second is the attorney's right to adequate compensation for work performed. To address these conflicting interests, we must consider three distinct rules.
. . .
It is our opinion that it is in the best interest of clients and the legal profession as a whole that we adopt the modified quantum meruit rule which limits recovery to the maximum amount of the contract fee in all premature discharge cases involving both fixed and contingency employment contracts. The attorney-client relationship is one of special trust and confidence. The client must rely entirely on the good faith efforts of the attorney in representing his interests. This reliance requires that the client have complete confidence in the integrity and ability of the attorney and that absolute fairness and candor characterize all dealings between them. These considerations dictate that clients be given greater freedom to change legal representatives than might be tolerated in other employment relationships."
409 So.2d at 1019, 1021.
[2] Under rule 4-1.4(f)(4)(D), the division of a contingency fee between lawyers not in the same firm is limited to 75% for the lawyer primarily responsible and 25% for the lawyer secondarily responsible. Also rule 4-1.4(g)(1) permits a division in proportion to the services performed by each lawyer even without a written agreement as to the division of the fee. Jay's concession is entirely consistent with these rules.