[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 12, 2008
THOMAS K. KAHN
CLERK

-----------------------------------------

No. 07-15858
Non-Argument Calendar

-----------------------------------------

D.C. Docket  No. 04-00591-CV-T-30-TBM

TAMIKA BADILLO, individually,
PAULINA CAMPOS, individually,

Plaintiffs-Appellees-
Cross Appellants,

NICOLE BREITFELLER, et al.,

Plaintiffs,

versus

PLAYBOY ENTERTAINMENT GROUP, INC., et al.,

Defendants,

RICHARD STUART SHANKMAN,
LITIGATION CONCEPTS, LC.,

Claimants-Appellants-
Cross Appellees.

-----------------------------------------
Appeals from the United States District Court
for the Middle District of Florida
-----------------------------------------

**(December 12, 2008)**

Before EDMONDSON, Chief Judge, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Lien-claimant Richard S. Shankman[1] appeals the amount of attorneys' fees awarded by the district court for services rendered to his former clients, Tamika Badillo and Paulina Campos. Badillo and Campos file a cross-appeal contending that no attorneys' fees were due to be awarded. No reversible error has been shown; we affirm.

At the heart of this fee dispute are settlement funds attributable to a lawsuit based on the unauthorized commercial distribution of videos of Badillo and Campos participating in "wet t-shirt" contests during spring break in 2001. Shankman first filed suit against Playboy and others on behalf of Monica Pippin, another spring break participant. Shankman investigated other potential causes of action and claimants; upon discovering images of Badillo and Campos, Shankman met with the women. Badillo and Campos each signed a contingent fee agreement with Shankman on 31 July 2003 and 5 August 2003, respectively, pursuant to which Shankman was to receive 45% of the total recovery. Because Shankman was a relatively inexperienced attorney, he needed the assistance and resources of a seasoned litigator. On 20 August 2003, at Shankman's behest, Badillo and Campos signed an addendum to the contingency fee agreement that provided that

---

[1]Shankman filed suit on behalf of himself and his firm, Litigation Concepts, L.C.

2

Arthur Tifford would serve as co-counsel and would split the attorneys' fees equally with Shankman.

On 22 March 2004, a complaint and motion for preliminary injunction was filed by Tifford and Shankman on behalf of Badillo and Campos and others. Badillo and Campos terminated Shankman's employment about one month later. After Shankman's discharge, Badillo and Campos executed a separate contingent fee agreement with Tifford pursuant to which Tifford would receive 40% of the settlement proceeds. Badillo and Campos, represented by Tifford, entered into a settlement agreement with the Playboy defendants in November 2004.

Under Florida law,[2] an attorney who performed services on behalf of a client on a contingency fee basis and who is discharged before the contingency is accomplished may recover for services only in quantum meruit. Sohn v. Brockington, 371 So.2d 1089, 1093 (Fla.App. 1979). An attorney so discharged without cause is entitled to a fee based on the reasonable value of services rendered not to exceed the maximum fee provided in the fee agreement, Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982); if the discharge is for cause, forfeiture of some or all of the quantum meruit fee may be appropriate. See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947,

[2]The parties each cite to Florida law as applicable to the fee award.

3

956 (Fla.App. 1993). The trial court must first determine the reasonable value of the services rendered by the discharged attorney, see Kushner v. Engelberg, Cantor & Leone, P.A., 699 So.2d 850, 851 (Fla. App.1997); Searcy, 629 So.2d at 954-55. If the discharge was for cause, the trial court should reduce the quantum meruit award by the amount of damages, if any, suffered by the client. Id. If the client's damages do not exceed the quantum meruit fee, "the court is then free to consider whether forfeiture of some or all of the quantum meruit fee as already reduced by the client's damages is appropriate." Id. The court should look at the totality of circumstances to fashion an award that is fair to both the attorney and the client, Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Polentz, 652 So.2d 366, 369 (1995); the balancing of relevant factors and the ultimate determination of the quantum meruit award are matters within the sound discretion of the trial court. Id.

With the benefit of extensive briefing, testimony of the parties, consideration of expert testimony and other evidence, and after oral argument, the district court determined that Shankman was discharged for cause: Badillo and Campos lost confidence in Shankman when he fired previous co-counsel, failed to cooperate with Tifford, refused to honor Badillo's and Campos's directives about early settlement and media non-involvement, and otherwise behaved

4

unprofessionally. Nonetheless the district court concluded that Shankman's initial case development (some of which work pre-dated the contingent fee agreements with Badillo and Campos and was done in the earlier-filed Pippin case), his conceptualization of the primary legal theory, his efforts to discover potential defendants involved in the distribution of the videos, and his contribution to Tifford's early court filings, conferred a compensable quantum meruit benefit.

The district court also concluded that Badillo and Campos suffered no offsetting compensable damages as a result of Shankman's unprofessional conduct. But to the extent that Shankman sought an attorneys' fee award that, together with the 40% Badillo and Campos were obligated to pay Tifford, exceeded 45% of the recovery, the district court concluded such excess would be unfair and might be considered damages. So, the district court limited Shankman's fee award to 5% of the settlement proceeds (the difference between the 45% contingency agreement with Shankman and Tifford and the 40% contingency executed with Tifford after Shankman's discharge). And the district court determined also that a full 5% of the settlement proceeds was unjustified and unsubstantiated in the light of (i) Shankman's failure to document his hours with billing records; (ii) the reasonable value of Shankman's services; and (iii) the

actual benefit conferred as a result of his services. Upon consideration of the totality of the circumstances, an amount less than 5% was awarded.[3]

Shankman argues on appeal that the district court erred in concluding that he was discharged for cause and in greatly undervaluing the benefit his services conferred on the value of the case. For their part, Badillo and Campos argue that the district court's award of a quantum meruit fee was arbitrary, failed to consider the totality of the circumstances, and failed to offset damages suffered because of Shankman's mishandling of the litigation.

Both sides agree that we review a district court's attorneys' fee award for abuse of discretion; an abuse of discretion occurs if the proper legal standard is not applied or the award is based on findings of fact that are clearly erroneous. See Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation, 442 F.3d 1283, 1287 (11th Cir. 2006); Mutual Service Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1322 (11th Cir. 2004). No abuse of discretion has been shown.

We see no clear error in the district court's determination that Shankman was discharged for cause. Review of the record amply supports the court's

---

[3]Confidentiality of the settlement amount was a part of the settlement agreement. We refrain from using dollar amounts to preserve that confidentiality.

finding that Badillo and Campos lost confidence in Shankman and that loss of confidence stemmed from unprofessional behavior on Shankman's part.

And we see no clear error in the district court's assessment of the value Shankman's services conferred on the case. Shankman kept no contemporaneous records to support his fee claims; but Florida imposes no absolute requirement that contemporaneous records be maintained. See Brake v. Murphy, 736 So.2d 745, 746 (Fla.App. 1999). And, in the context of a quantum meruit recovery -- unlike an award of attorneys' fees to a prevailing party -- the conventional lodestar approach does not apply. Instead, the main focus is on the actual value of the services rendered; the time reasonably devoted is relevant but only as one factor in consideration of the totality of the circumstances surrounding the attorney-client relationship. See Searcy, 652 So.2d at 368; Rosenberg, 409 So2d. at 1022.

The district court looked to the totality of the circumstances to fashion an award that was fair to both the attorney and his former clients. See Searcy, 652 So.2d at 368. Neither party has advanced sufficient grounds for us to disturb the district court's sound discretion -- exercised after extensive evidentiary

proceedings -- in crafting the quantum meruit award.[4]

AFFIRMED.

---

[4]Badillo's and Campos's claim that additional damages should have been assessed based on the delay in disbursement of settlement proceeds is without merit.