DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PARKER WAICHMAN LLP,**
Appellant,

v.

**R.J. REYNOLDS TOBACCO COMPANY** and **LINDA PURDO,** individually
and as Personal Representative of the Estate of **THOMAS PURDO,**
Appellees.

No. 4D18-3239

[October 2, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 502007CA024173.

Alan J. Kluger and Michael T. Landen of Kluger, Kaplan, Silverman, Katzen & Levine, P.L., Miami and Bruce S. Rogow and Tara A. Campion of Bruce S. Rogow, P.A., Ft. Lauderdale, for appellant.

J. Chris Bristow of Critton, Luttier & Coleman, LLP, West Palm Beach, for appellee Linda Purdo.

KLINGENSMITH, J.

Parker Waichman LLP, a New York-based law firm organized as a limited liability partnership, appeals a final order discharging its charging lien in a tobacco litigation case. Rather than awarding the full amount of the contingency fee sought by the firm at the end of the case, the trial court ordered the firm receive attorneys' fees based on quantum meruit. For the reasons set forth below, we affirm the trial court's order.

In November 2007, Parker Waichman hired Jordan Chaikin, a lawyer licensed and based in Florida, as an associate attorney to assist in screening Florida *Engle*[1] cases. At the time, Chaikin was the firm's only Florida attorney. Shortly after joining Parker Waichman, Chaikin filed suit on behalf of the estate of Thomas Purdo along with other *Engle* lawsuits. These cases remained mostly inactive until 2010, upon agreement of the

---

[1] *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

attorneys, due to pending rulings from the appellate courts on various *Engle*-related issues.

In 2010, the firm's managing partner Jerrold Parker received a letter from the Florida Bar concluding that Parker Waichman was engaging in the unlicensed practice of law by operating a Florida office without having a licensed partner in the state. The Florida Bar determined that Mr. Parker was holding himself out as a licensed attorney in marketing materials disseminated in Florida without the required limiting jurisdictional language indicating he was not a member of the Florida Bar. Subsequently, both Mr. Parker and the firm agreed that they would change their business operations to comply with the Bar's requirements.

Parker Waichman subsequently named Chaikin as a partner in its Florida office. In fact, Chaikin remained the only lawyer in the firm's Florida office. Although Chaikin's agreement with the firm described him as both a "profit partner" and "supervisory partner," Chaikin was not allowed access to the financial information or capital of the partnership, and could not vote in partnership matters. Despite being described as a "profit partner," his salary was determined by the managing partners, he did not share in the firm's profits, and continued to receive compensation as a salaried W-2 employee entitled only to discretionary bonuses. Chaikin stipulated that he was a partner and referred to himself as such, but the evidence showed that Chaikin was never an equity partner of Parker Waichman and his role within the firm did not materially change with the new designation.

In 2011, Chaikin invited attorney Alex Alvarez to his office to review Parker Waichman's pending tobacco cases. Alvarez agreed to serve as co-counsel with Parker Waichman on a few of these cases, including Purdo's case. Accordingly, Linda Purdo executed a new contingency fee agreement on behalf of the estate with the Alvarez Law Firm, Parker Waichman, and an appellate lawyer using Alvarez's form agreement.

Towards the end of 2015, Chaikin resigned from Parker Waichman to start his own firm. Parker Waichman sent Ms. Purdo a client departure letter advising her that she had the right to do one of three things: 1) have Parker Waichman and The Alvarez Law Firm continue to represent her; 2) have Chaikin represent her; or 3) elect to retain new counsel. Unhappy with the letter's limited and rigid options, Ms. Purdo indicated she wished to retain Chaikin but added "and the Alex Alvarez Law Firm," clearly choosing Chaikin and Alvarez and terminating her relationship with Parker Waichman. The trial court then issued an order substituting Chaikin as counsel for Ms. Purdo and relieving Parker Waichman. In

2

March 2016, once Parker Waichman was terminated, the firm filed the charging lien at issue in this case.

The Purdo case went to trial in April 2016. According to evidence provided to the court, most of the trial preparation took place from January 2016 up until the day of trial with Chaikin involved in many aspects of it. Chaikin was also significantly involved in several matters during trial even though Alvarez admittedly handled the bulk of the trial work. The trial, which lasted almost a month, resulted in a verdict in favor of the Purdo estate for $33.5 million. As a result, Chaikin was entitled to a contingency fee of $4,223,700.

After the verdict was upheld on appeal, Parker Waichman began litigating its charging lien and asked the trial court to award it the full contingency fee to be paid to Chaikin. At the three-day evidentiary hearing, Parker Waichman submitted that the firm worked a total of 116 hours on the Purdo case with cost disbursements totaling $17,803.88. Consistent with Parker Waichman's time records, Chaikin agreed that he spent between 100 and 120 hours on the Purdo case while employed by Parker Waichman, and that his hourly rate while employed at the firm was between $500 and $650 per hour.

After the hearing, the trial court awarded Parker Waichman attorney's fees of $75,400.00 based on quantum meruit (116 hours at a rate of $650 per hour) and costs of $17,803.88 for a total of $93,203.88 which the parties agreed would be paid from Chaikin's fee. The trial court also dismissed Parker Waichman's charging lien with prejudice. This appeal follows.

When fashioning an attorney's fee award for a discharged firm "[t]he determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court." *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (Fla. 1995). However, when dealing with a claim that the trial court used an incorrect legal standard or failed to properly apply the correct legal standard, the standard of review is *de novo*. *See Wiener v. The Country Club at Woodfield, Inc.*, 254 So. 3d 488, 491 (Fla. 4th DCA 2018).

Here, Parker Waichman argues the trial court failed to apply the correct standard for the fee award as provided in *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum*, LLP, 519 Fed. Appx. 657, 661 (11th Cir. 2013) and *Frates v. Nichols*, 167 So. 2d 77, 82 (Fla. 3d DCA 1964). We disagree.

3

In *Buckley,* the court summarized the law regarding fee awards for firms who have been discharged by a client prior to completing their representation:

> The law in Florida relating to a firm's right to contingency fees earned after the attorney-client contract is terminated varies depending on the relationship between the initial firm and the subsequent firm representing the client. When there is no connection between the two firms, the initial firm is entitled to a quantum meruit award, limited by any agreement to a maximum fee award. When an **associate attorney** at the initial firm exits the firm and the client follows the associate to a new firm, the initial firm is also entitled to this limited quantum meruit award. However, when a **partner** exits the initial firm and the client follows, the initial firm is entitled to the entire contingency fee, less the former partner's partnership share.

*Id.* (Emphases added and citations omitted).

*Buckley* cited to *Frates* for the proposition that "the initial firm is entitled to the entire contingent fee, less the former partner's partnership share" when a partner exits the firm. *See Buckley*, 519 Fed. Appx. at 661. In *Frates*, the Third District referred to the common law of partnerships to hold that "a law partner in dissolution owes a duty to his old firm to wind up the old firm's pending business, and that he is not entitled to any extra compensation therefor." 167 So. 2d at 80. Because the clients already had retainer agreements with Frates' old firm, the appeals court opined that the cases were assets of the old firm which Frates had a duty to wind up once he joined his new firm—without receiving any extra compensation for doing so. *Id.* at 81. As such, the Third District held that the old firm was entitled to keep the entire fee award minus Frates' partnership share under the old partnership agreement. *Id.* at 82.

After *Frates* was decided, Florida made significant changes to its partnership law. *See Buckley*, 519 Fed. Appx. at 662. In 2005, Florida adopted the Revised Uniform Limited Partnership Act. *See* § 620.1101, Fla. Stat. (2018), *et seq*. The Act states that limited liability partnerships are composed of members who are either general partners or limited partners. *See* §§ 620.1402, 620.1305, Fla. Stat. (2018). General partners manage the operations and activities of a limited liability partnership. *See* §§ 620.1402, 620.1406, Fla. Stat. (2018). General partners can also bind the partnership by any actions that they take on behalf and in furtherance of the partnership. *See* § 620.1402. Because their actions can cause the

4

partnership great potential liability, general partners must abide by stringent standards of conduct. *See* § 620.1408, Fla. Stat. (2018). For instance, a general partner has a duty of loyalty to the partnership which it must follow even during the process of winding up the partnership's activities. *See* § 620.1408(3). Though a partnership agreement may specify the duties and responsibilities of a general partner, no agreement may eliminate a general partner's duty of loyalty, obligation of good faith and fair dealing, or duty of care. *See* § 620.1110, Fla. Stat. (2018).

In contrast, "[a] limited partner does not have any fiduciary duty to the limited [liability] partnership" but must discharge its duties "consistently with the obligation of good faith and fair dealing." § 620.1305, Fla. Stat. (2018). A limited partner is not prohibited from taking an action merely because that action "furthers the limited partner's own interest." § 620.1305(3). Additionally, to withdraw from a limited partnership, a limited partner need only give notice of its "express will to withdraw as a limited partner." § 620.1601(1)(a), Fla. Stat. (2018).

In *Buckley*, the court considered whether an equity-holding attorney was entitled to fees after leaving his firm—a professional corporation—to join another, taking several clients with him. *Id.* at 659-60. Although the Eleventh Circuit acknowledged that *Frates* dealt with partnership law and not the law of corporations, it did not "believe Florida courts would allow attorneys to shirk fiduciary duties simply by choosing an alternate business entity for their law firm." *Id.* at 662-63. The court further noted that "Florida law generally does not distinguish between lawyers in partnerships and those in professional corporations." *Id.* at 663. As such, the court in *Buckley* applied *Frates* and held that the corporation was entitled to the fees obtained by the equity attorney because he owed his professional corporation the duty to wind up its affairs without receiving extra compensation for doing so. *Id.* at 665.

Here, the evidence shows Parker Waichman LLP was created and organized in New York, thus it is a foreign limited liability partnership under Florida law. *See* § 620.1901, Fla. Stat. (2018). There was no evidence that Chaikin was ever a general partner or had equity ownership in the firm. The evidence before the trial court was that Parker Waichman initially hired Chaikin as an associate attorney, but in the wake of the Florida Bar investigation, later named him a partner.[2] While Chaikin's

---

[2] We rely on Chaikin's stipulation that he was a partner and not Parker Waichman's joinder agreement, which details the addition of Chaikin as a "new profit partner." While this joinder agreement, which also states that New York law controls, is in the record, the trial court declined to consider it. Further, the

title may have changed, his duties, responsibilities, and compensation did not. Chaikin did not enjoy the benefits of general partnership status, namely access to the firm's financial information, the ability to withdraw from capital accounts, or a right to vote on the firm's affairs. *See* §§ 620.1402, 620.1406(1), Fla. Stat. Parker Waichman crafted this arrangement to obtain the benefit of getting clients in Florida without the obligations commensurate with making Chaikin a general partner or providing him equity ownership. Calling Chaikin a "partner" may have satisfied the firm's obligations under Florida Bar rules, but mere labels do not control the outcome here. Although *Buckley* did not expressly define what a partner is for the purposes of fee sharing, we find that the relationship requires more than simply a change of title.

For all practical purposes, Chaikin's position never changed vis-à-vis the firm. Assuming Chaikin was a partner of Parker Waichman, he would be more aptly characterized as a limited partner and not a general partner. *See* § 620.1305. As a limited partner, Chaikin would have had no duty to wind up Parker Waichman's affairs relating to the Purdo case after he left the firm and breached no duties to Parker Waichman by signing her as a client with his new firm. *See id.* Since Chaikin owed no fiduciary duty to the firm, Parker Waichman was not entitled to the full proceeds of Chaikin's share of the Purdo contingency fee. *Cf. Buckley*, 519 Fed. Appx. at 663; *Frates*, 167 So. 2d at 80. As such, the division of fees resulting from Chaikin's disassociation from the firm should be treated like that involving the departure of an associate. *See Buckley*, 519 Fed. Appx. at 661; *Frates*, 167 So. 2d at 80.

In sum, for the purposes of dividing the contingency fee in a case involving the departure of a limited partner from a firm, the framework should mirror the one used when an associate attorney leaves a firm rather than when a general partner, equity holding attorney, or shareholder departs. *See Buckley*, 519 Fed. Appx. at 661; *Poletz*, 652 So. 2d at 369. Therefore, Parker Waichman was only entitled to a quantum meruit award for work completed on the Purdo case when Chaikin was with the firm. *See Poletz*, 652 So. 2d at 369. The court's $93,203.88 award of fees and costs to Parker Waichman was supported by the evidence and within the proper exercise of the trial court's discretion. *See id.*

*Affirmed.*

CONNER and KUNTZ, JJ., concur.

---

parties expressly relied on Florida law to support their positions before the trial court and on appeal.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*